### State v. Padgett
*[Cite as 2 AOA 104]*

*Case No. 11770*
*Montgomery County, (2nd)*
*Decided April 16, 1990*

*Crim. R. 11*

*Lee C. Falke, Montgomery County Prosecutor, By Carley Ingram, Assistant Prosecuting Attorney, 41 North Perry Street, Suite 315, Dayton, Oh 45402, Attorney for Plaintiff-Appellee.*

*David R. Miles, 201 East Dayton-Yellow Springs Road, Fairborn, OH 45324, Attorney for Defendant-Appellant.*

FAIN, J.

Defendant-appellant David R. Padgett appeals in these two consolidated appeals from negotiated pleas of guilty taken in one plea proceeding. Padgett contends that the trial court erred by accepting his pleas because there was an insufficient basis upon which to determine that they were voluntarily made, or that Padgett was competent at the time. Padgett also contends that the trial court erred by denying, without a hearing, his motion to withdraw his guilty pleas, made after sentencing.

We conclude that there was an insufficient basis upon which to determine that Padgett's guilty pleas were voluntarily made, because his protestations of innocence during the plea proceedings, unaccompanied by any showing of a rational calculation on his part that it was nevertheless in his best interests to accept the deal offered by the State, fail to portray the existence of a knowing and intelligent waiver of rights on his part.

Apart from our conclusion that the trial court erred in accepting Padgett's pleas in the first instance, we find no error in the trial court's having denied, without a hearing, Padgett's motion to withdraw his guilty pleas, made after sentencing. Furthermore, we find evidence in the record to support the trial court's determination that Padgett was competent to stand trial.

Because we conclude that the trial court erred by accepting Padgett's guilty pleas, his convictions and sentences will be reversed, and this cause will be remanded for further proceedings.

I

Padgett was charged by indictment in two different cases. In Case No. 88-CR-3678, Padgett was charged with two counts of Aggravated Burglary. In Case No. 89-CR-1408, Padgett was charged with Kidnapping, three counts of Rape, Aggravated Burglary and Intimidation of a Witness. In both cases, Padgett entered pleas of not guilty and not guilty by reason of insanity, and moved for examinations on both sanity and competence. Three weeks before Padgett was indicted in the second case, he was found mentally incompetent to stand trial in the first case. This finding was based on a psychiatric report by Dayton Area Forensic Psychiatric Services. The report found that his competence was restorable within one year.

Following his indictment in the second case, Padgett, who was apparently receiving treatment, was examined by Dr. Barbara Bergman. At the hearing on the competency issue, it was stipulated that Dr. Bergman, had she been present to testify, would have testified that Padgett was competent to stand trial. Based upon this stipulation, the trial court found Padgett competent to stand trial.

The week before Padgett was to stand trial in both cases, a plea was negotiated in both cases. Pursuant to the plea agreement, Padgett was to plead guilty in each case to one count of Aggravated Burglary, and all other counts in both cases would be dismissed. Due to the unavailability at that time of the trial judge assigned to the case, the negotiated guilty pleas were taken by the Honorable Carl D. Kessler, the presiding judge of the Montgomery County Common Pleas Court.

In the plea proceedings, the prosecutor recited the charges against Padgett and the nature of the negotiated agreement. The following colloquoy then ensued between the trial court, Padgett, and Padgett's attorney:

"THE COURT: Okay, is this what you want to do?

"MR. BROWN: [Padgett's attorney] That's correct. That is a correct statement of the plea negotiations. At this time Mr. Padgett is ready to tender a plea of guilty to two counts of aggravated burglary.

"THE COURT: Is this what you want to do?

"THE DEFENDANT: Yeah. I want to go ahead and do that.

"THE COURT: Now, you listen to me very carefully and just say 'yes' and 'no'."

Thereupon, the trial court discussed the rights that Padgett would be waiving by pleading guilty.

While the trial court was explaining the right of confrontation, the following ensued:

"THE COURT: And you understand in each case you have a right to face the people that accuse you of these charges?

"THE DEFENDANT: Yeah. She was lying.

"THE COURT: Just don't talk to me. [sic] Answer 'yes' or 'no'."

A few questions later, the following ensued:

"THE COURT: Now, have you talked both of these cases over with your lawyer, Mr. Brown.

"THE DEFENDANT: Yeah. I talked to Keith a lot.

"THE COURT: Do you understand what you're charged with?

"THE DEFENDANT: Yeah. That's a lie.

"THE COURT: What's the penalty, Seabiscuit [a reference to the prosecutor, Terry Seeberger]?

"MR. SEEBERGER [representing the State]:

The penalty on this would be an indeterminate sentence of 5, 6, 7, 8, 9 or 10 years to 25 years on each count, and potentially up to a $10,000 find on each case.

"THE COURT: Do you understand what the penalty is?

"THE DEFENDANT: Yeah, but I ain't got that much money.

"THE COURT: I don't want to hear that. You either understand or you don't. Do you understand?

"THE DEFENDANT: Yes.

"THE COURT: Are you sure this boy knows what he's doing here?

"MR. BROWN: As well as can be expected, your Honor.

"THE COURT: And you want to give these rights up and plead guilty?

"THE DEFENDANT: Yeah.

"THE COURT: Can you read?

"THE DEFENDANT: Yeah, I can read.

"THE COURT: I want you to read these two papers and sign them.

"MR. BROWN: Your Honor, Mr. Padgett has read and executed them.

"THE COURT: Do you understand them?

"THE DEFENDANT: Yeah. I read them.

"THE COURT: Do you understand them?

"THE DEFENDANT: Yeah, 'cause you told me what was going on.

"THE COURT: Let the record reflect in each case the necessary parties have signed the waiver and plea form and the Court, in each case, will find that the Defendant knowingly and voluntarily entered a plea of guilty as indicated. We will accept it and refer the matter to the Probation Department for a pre-sentence investigation. ***."

Thereafter, Padgett was sentenced to two concurrent terms of ten to twenty-five years of incarceration. After being sentenced, Padget moved to withdraw his guilty pleas, but his motion was overruled. Padgett appeals from his convictions and sentences.

## II

Padgett's First and Third Assignments of Error are as follows

FIRST ASSIGNMENT OF ERROR
APPELLANT'S GUILTY PLEAS WERE INVOLUTARY AND SHOULD BE VACATED DUE TO APPELLANT'S IN-COURT STATEMENTS.

THIRD ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY ACCEPTING APPELLANT'S GUILTY PLEAS.

Essentially, Padgett contends that the record reflects that the trial court failed to comply substantially with Crim. R. 11 in accepting his guilty pleas.

Crim. R. 11(C)(2) provides:

"In felony cases, the court may refuse to accept the plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

(a) Determining that he is making the plea voluntarily, with the understanding of the nature of the charge and with the maximum penalty and, if applicable, that he is not eligible for probation.

(b) Informing him and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

(c) Informing him and determining that he understands that by this plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

In this case, there were protestations of innocence during the plea proceedings. A defendant who maintains his innocence may, nevertheless, plead guilty to the offense with which he is charged. *North Carolina v. Alford* (1970), 400 U.S. 25. A defendant who believes himself to be innocent may rationally conclude that the evidence against him is so incriminating that there is a significant chance that a jury would find him guilty of the offense with which he is charged. A defendant in this position may rationally conclude that accepting a plea bargain is in his best interests, since he will avoid the risk of greater punishment if a jury should find him guilty. Although a defendant may knowingly and intelligently plead guilty and thereby waive his various constitutional rights to a fair trial, even when he protests his innocence, the rational calculus in such cases differs significantly from the more usual guilty plea in which the defendant admits that he is guilty.

The essential duty imposed upon the trial judge by Crim. R. 11 is to ascertain that the defendant's decision to plead guilty, and thereby waive his various constitutional rights to a fair trial, is a knowing and intelligent decision. In the typical case, this requires the trial judge to

determine that the defendant, with an understanding of the nature of the charges against him, acknowledges his guilt, and that, with an understanding of the constitutional protections to which he is entitled, he agrees to waive them.

Because an *Alford* plea involves a rational calculation that is significantly different from the calculation made by a defendant who admits he is guilty, the obligation of the trial judge with respect to the taking of an *Alford* plea is correspondingly different. The trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor. Thus, in a footnote, the United States Supreme Court has observed that:

"Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions *properly* caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, [citations omitted]; and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." [Citations omitted.] *North Carolina v. Alford, supra,* n. 10, at 400 U.S. 38 (emphasis added).

The proper taking of a guilty plea requires "a meaningful dialogue between the court and the defendant." *Garfield Heights v. Brewer* (1980), 17 Ohio App. 3d 218; *State v. Bowling* (March 10, 1987), Montgomery App. No. 9925, unreported. This requires more than a routine litany. Where the defendant interjects protestations of innocence into the plea proceedings, and fails to recant those protestations of innocence, the trial court must determine that the defendant has made a rational calculation to plead guilty nothwithstanding his belief that he is innocent. This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the State's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty.

In the case before us, there was no discussion with Padgett concerning the sincerity of his protestations of innocence, or his reasons for pleading guilty notwithstanding his protestations of innocence. In our view this was insufficient to meet the trial court's obligations under Crim. R. 11. We realize that this holding poses obstacles to a trial judge who is attempting to take a guilty plea from a defendant who, sincerely or insincerely, protests his innocence and professes difficulty in understanding the trial judge's questions. However, we conclude that if a guilty plea is to be accepted, the trial court must determine, in a meaningful way, that the defendant's decision to tender the plea is knowing and intelligent. If it becomes impossible for the trial court to satisfy itself that the defendant's decision is knowing and intelligent, the trial court has the alternative of declining to accept the plea. Crim. R. 11(C)(2). See also, *North Carolina v. Alford, supra,* at 400 U.S. 38.

The State relies upon *State v. Piacella* (1971), 27 Ohio St. 2d 92, 96, for the proposition that an *Alford* plea may be accepted:

"*** where the record affirmatively discloses that (1) a guilty plea was not the result of coercion, disception, or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent in light of the circumstances surrounding the pleas; (4) the plea was made with the understanding of the nature of the charges; and (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial or both, ***." What is missing in the case before us is any affirmative showing in the record that Padgett's plea was motivated by a desire to seek a lesser penalty or by the fear of the consequences of a jury trial, and that any such desire or fear on Padgett's part was intelligent in the sense that it was a rational response to the state of the evidence in the case.

Padgett's First and Third Assignments of Error are sustained.

### III

Padgett's Second Assignment of Error is as follows:

APPELLANT'S GUILTY PLEAS WERE INVOLUNTARY AND SHOULD BE VACATED DUE TO THE APPELLANT'S INCOMPETENCY.

In this Assignment of Error, Padgett contends that the trial court erred in finding him competent at trial.

Padgett relies upon an earlier finding of incompetency which was based upon a report of an expert who opined that Padgett was incompetent, but that he was restorable to competency within a year.

Padgett was subsequently examined by Dr. Bergman, and the parties stipulated that she would testify that Padgett was competent to stand trial. This was a more recent examination of Padgett, and was not inconsistent with the earlier report, which had found Padget restorable to competency.

In view of what the parties stipulated Dr. Berman's testimony would be, we cannot say that the trial court abused its discretion by finding Padgett competent to stand trial.

Padgett's Second Assignment of Error is overruled.

### IV

Padgett's Fourt and Fifth Assignments of Error are as follows

### FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY NOT GRANTING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS AFTER SENTENCING.

### FIFTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY NOT GRANTING DEFENDENT HIS REQUEST FOR AN ORAL HEARING ON HIS MOTION TO WITHDAW PLEAS OF GUILTY.

As Padgett recognizes in his brief, motions to withdraw a plea of guilty made after sentence has been imposed shall only be granted "to correct manifest injustice." Crim R. 32.1.

Padgett's motion was based upon his alleged incompetency, the fact that his guilty pleas were not knowing and intelligent, and allegations concerning the credibility of the complainant, which allegations were unverified by affidavit or otherwise.

Padgett's alleged incompetency at the time he tendered his pleas has been dealt with in Part III, above. The fact that Padgett's guilty pleas may not have been knowingly and intelligently made is dealt with in Part II, above, and, in fact, provides the basis for our reversal of his convictions and sentences.

The only independent basis for Padgett's Fourth and Fifth Assignments of Error is his unverified allegations concerning the credibility of the complainant. We are not prepared to hold that a hearing is required on a motion to withdraw a guilty plea, after sentencing, just because the defendant has decided, at that late date, that he would like the opportunity to attack the credibility of his accuser, a right he expressly waived when he tendered his plea.

Padgett's Fourth and Fifth Assignments of Error are overruled.

### V

Padgett's First and Third Assignments of Error having been sustained, the judgment of the trial court will be reversed, and this cause wil be remanded for further proceedings consistent with this opinion.

*Judgment reversed,*
*and cause remded.*

WOLFF, P.J. and BROGAN, J., Concur.