DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Williams County Court of Common Pleas denying appellant's motion to withdraw hisAlford plea. For the following reasons, we affirm the decision of the trial court.
On October 9, 1996, appellant was charged with one count of murder, in violation of R.C. 2903.02(A). He was arraigned on October 16, 1996, and entered a plea of not guilty. A trial date was set for December 16, 1996.
On December 13, 1996, appellant appeared in court and agreed to enter a plea pursuant to North Carolina v. Alford (1970),400 U.S. 25. Pursuant to the plea agreement, the charge was amended to involuntary manslaughter, in violation of R.C. 2903.04.
During the plea hearing, the trial court recited the facts ofAlford, and explained the ramifications of entering a plea pursuant thereto. Appellant then indicated that he understood the nature of the plea. The trial court judge then stated that he was going to be asking certain background questions of appellant and that if appellant did not understand a particular question, he should so indicate.
Appellant responded negatively to the trial court's questioning as to whether appellant had been threatened or forced to enter the plea and as to whether his attorneys had failed to do anything he requested of them. Appellant affirmatively answered questions regarding the competency of his attorneys and the adequacy of their representation.
The trial court also explained the range of prison terms attached to the crime of involuntary manslaughter and the bad time and post-release control provisions. The trial court further explained that by entering the Alford plea appellant was giving up certain constitutional rights, including the right to a jury trial and the right to confront and question witnesses. Appellant indicated that he understood. The state then summarized the facts it would have presented at trial. Specifically, the state stated that the evidence would show that on September 30, 1996, appellant drove to the Bryan Police Department and told police that the night before his home had been ransacked by two white males and that he had been kidnaped. One of the males had been driving appellant's vehicle and when he stopped to get gas, appellant jumped into the front seat and drove off. Appellant further stated that he feared that his wife had been murdered but that he had not returned to their home. The state posited that if the case had gone to trial, it would have been able to prove that the entire kidnapping story was fabricated and that the cause of death of appellant's wife was asphyxiation or suffocation. The state further indicated that expert testimony would show that the manner of death was homicide by a third person and that all circumstantial evidence points to appellant. After the statement by the state, the guilty plea was accepted and the matter was continued for sentencing.
On January 24, 1997, appellant filed a pro se motion to withdraw his guilty plea on the basis that his plea was not knowing and voluntary and that he was denied effective assistance of counsel. Appellant was appointed new counsel and the matter came on for hearing on March 18, 1997.
At the March 18, 1997 hearing, after waiving the attorney-client privilege appellant's former counsel, John and Mike Shaffer (to avoid confusion, the court will refer to the brothers by their first names), testified. Mike testified that John was lead counsel on the case and that he did not have as much contact with appellant. He did state that appellant had always maintained his innocence while in his presence. Mike was present at a meeting on December 12, 1996, held to explain the state's offer to appellant.
Mike testified that at the meeting an Alford plea was explained to appellant. He was also told that the prosecution was going to recommend the maximum sentence but that the ultimate decision was left to the judge. It was also discussed that because he was Iranian, there may be some juror bias and that they would attempt to eliminate any biased jurors during voir dire.
Regarding discovery matters, Mike indicated that appellant had expressed interest in obtaining the medical records of his wife, but that he was not aware that appellant asked for a copy of the records. He was also provided access to witness statements.
Attorney John Shaffer, in addition to the testimony of Mike, testified that he provided appellant with copies of some of the documents. He stated that he would take his files with him whenever they met and allowed appellant full access. John was not aware that appellant was suicidal prior to the plea. He testified that subsequent to the plea, appellant indicated that he had some emotional problems but refused John's offer to get him professional help.
John also testified that the Monday after appellant entered his plea appellant contacted him and expressed a desire to withdraw it. John did not file a motion to withdraw because he felt that appellant accused him of inadequacy and that presented a conflict.
Dr. Joseph Gerwood, a psychologist at the Corrections Center of Northwest Ohio ("CCNO"), where appellant was being held, testified that the corrections staff placed appellant on two separate suicide watches for periods of time, and he maintained the watches. On about December 26, 1996, a suicide note was confiscated from his cell.
Gerwood testified that despite the watches and notes appellant consistently denied "anxiety or depression or homicidal ideation." During their meetings Gerwood found appellant to be pleasant and cooperative, not tearful or depressed. Gerwood also testified that appellant told him originally that he had been robbed and kidnaped. Later, on or about October 11, 1996, appellant admitted he had been lying.
Lawrence Henry, senior case manager at CCNO, testified that when appellant entered CCNO, on September 30, 1996, he was classified as a suicide risk. Henry clarified that such evaluation was not made by a trained mental health professional. Appellant's brother, James Kafai, next testified that appellant maintained his innocence with him. He stated that the night before the plea hearing he went to see appellant; however, CCNO did not allow him in because it was a professional visit, for attorneys only. Kafai stated that he was going to advise against the plea bargain. He did speak with appellant later, on the telephone, and told him that he should reject the plea bargain. Kafai did acknowledge that it was ultimately appellant's decision.
Appellant was the final defense witness. He stated that his attorneys did not explain to him what involuntary manslaughter and an Alford plea were and that he did not understand the sophisticated language that was used. Appellant had completed the eighth grade and claimed to have a GED but had no such documentation.
Appellant also stated that he was pressured into accepting the plea. Appellant claims that his attorneys told him that he would be found guilty, that a trial is too expensive, that his brother and sister-in-law would testify against him, that because he is a foreigner the jury would automatically think he was guilty, and that if he accepted the plea he would only get a five-year sentence.
As to discovery, appellant claimed that he was never provided with his wife's medical records. He stated that only after he entered his plea was he given the records and, had he had them earlier, he would have never entered the plea.
As to his mental health, appellant testified that he had been suicidal but denied it because he did not want to be subjected to the humiliation of wearing paper clothes and being observed in a glass cell at CCNO.
During the plea hearing, appellant denied any memory of the trial court's questions regarding his level of understanding of the proceedings. He stated that he placed his complete trust in his attorneys and remembers none of the details of the proceedings.
The state questioned appellant regarding a 1989 conviction, in California, for possession of cocaine pursuant to a guilty plea. He acknowledged that he signed the plea form but that he did not understand it at that time.
John and Mike Shaffer were called by the state and refuted the allegations made by appellant. John acknowledged that it was a difficult case and he had nothing to lose by proceeding to trial.
At the close of the evidence and arguments of counsel, the trial court stated that it would take a fifteen minute recess and return with a decision. Thereafter, the trial court denied the motion to withdraw the guilty plea.
On March 21, 1997, the trial court sentenced appellant to the maximum ten-year prison term. Appellant filed a pro se
motion for delayed appeal which was granted by this court on May 12, 1999. Counsel was appointed.
Appellant now raises the following assignments of error:
 "1. WHETHER THE WILLIAMS COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF DEFENDANT/APPELLANT WHEN IT FAILED TO DETERMINE WHETHER DEFENDANT/APPELLANT HAD MADE A RATIONAL CALCULATION THAT IT WAS IN HIS BEST INTEREST TO ACCEPT AN ALFORD PLEA.
 "2. WHETHER THE WILLIAMS COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF DEFENDANT/APPELLANT BY FAILING TO SUFFICIENTLY DETERMINE WHETHER THE STATE HAD A FACTUAL BASIS TO ESTABLISH GUILT ON THE INDICTED CHARGE OF MURDER BEFORE ACCEPTING DEFENDANT/APPELLANT'S ALFORD PLEA.
 "3. WHETHER THE WILLIAMS COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF DEFENDANT/APPELLANT BY FAILING TO GIVE CAREFUL CONSIDERATION TO THE MERITS OF DEFENDANT/APPELLANT'S MOTION TO WITHDRAW HIS ALFORD PLEA."
In his first assignment of error, appellant acknowledges that the trial court complied with the Crim.R. 11(C)[1]
requirements regarding the plea colloquy; however, appellant claims that the trial court committed reversible error when it failed to determine whether appellant rationally calculated that an Alford plea was in his best interests. In support, appellant relies on State v. Padgett (1990), 67 Ohio App.3d 332.
In Padgett, the court, relying on a footnote in Alford, determined that when a defendant interjects protestations of innocence during the plea proceedings, the trial court must make an inquiry of defendant that he has made a rational calculation to plead guilty. Id. at 338. After reviewing Alford and Ohio case law, we find, as the state argues, that Padgett is not controlling law.
In State v. McDay (May 9, 1997), Lucas App. No. L-96-027, unreported, the appellant argued that his Alford plea should not have been accepted because there was no evidence presented that it was made with the "`required rational calculation.'" This court determined that:
 "The trial court, in accepting an Alford guilty plea, must be satisfied that the defendant has made a conscious choice to plead and avoid the risk of going to trial and being found guilty as charged in the indictment. No determination of the voluntary and intelligent nature of such a plea can be made without the presentation of some basic facts surrounding the offenses charged. Alford, supra; see, also, State v. Casale (1986), 34 Ohio App.3d 339, 340, 518 N.E.2d 579." Id. at 4.
We then found that because the state presented evidence that it would have produced had the case proceeded to trial, the trial court had an adequate factual basis upon which it could determine the voluntary and intelligent nature of the appellant's guilty plea. Id.
In the instant case, as set forth above, the state presented evidence that it would have produced at trial. Upon consideration whereof, we find that the trial court could have determined that it was in appellant's best interests to enter a guilty plea. Accordingly appellant's first assignment of error is not well taken.
In appellant's second assignment of error, he argues that the trial court committed reversible error when it failed to determine whether the state had a sufficient factual basis to accept appellant's Alford plea.
Before accepting an Alford plea, the trial court must also require the state to show a basic factual framework for the charge and plea. Alford, supra; Casale, supra. Again, as set forth infra, the state, in this case, claimed it would have presented evidence that the kidnapping story was fabricated, the cause of death of appellant's wife was asphyxiation cause by a third person and that all circumstantial evidence pointed to appellant. We find that the state's statement clearly satisfied that factual basis requirement for an Alford plea. Accordingly, appellant's second assignment of error is not well-taken.
In appellant's third and final assignment of error, he contends that the trial court committed reversible error by failing to give careful consideration to the merits of appellant's motion to withdraw his Alford plea.
Generally, a motion to withdraw a guilty plea filed before sentencing will be freely and liberally granted. State v.Xie (1992), 62 Ohio St.3d 521, 526. See Crim.R. 32.1 However, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. Id. at paragraph one of the syllabus. Rather, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea. Id. at 527. The Xie court also held that the decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Id.
at 526. The trial court has abused its discretion where its ruling is "`unreasonable, arbitrary or unconscionable.'" Id. at 527, citing State v. Adams (1980), 62 Ohio St.2d 151, 157.
In reviewing a trial court's decision regarding a motion to withdraw a plea, the court in State v. Fish (1995), 104 Ohio App.3d 236, has provided a non-exhaustive list of factors which it felt should be weighed when considering a motion to withdraw a plea. Such factors include: (1) whether the prosecution would be prejudiced if the plea was vacated; (2) whether the accused was represented by highly competent counsel; (3) whether the accused was given a full Crim.R. 11 hearing; (4) whether a full hearing was held on the motion; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the motion was made within a reasonable time; (7) whether the motion set forth specific reasons for the withdrawal; (8) whether the accused understood the nature of the charges and possible penalties; and (9) whether the accused was perhaps not guilty or had a complete defense to the crime. Id. at 240; seeState v. Mullins (Dec. 31, 1998), Lucas App. No. L-98-1059, unreported.
Appellant argues that the trial court rushed to conclude the motion on the same day and allowed himself only fifteen minutes after the close of the evidence to render a decision and, resultantly, that the trial court did not give full and fair consideration to the merits of the motion. We disagree.
During the hearing, appellant presented six witnesses who were thoroughly examined and cross-examined. In rendering its decision, the trial court reviewed some of the evidence presented during the hearing and concluded that the bases for the motion had not been proven. Upon careful review of the entire hearing transcript, we find that the record is devoid of evidence that the trial court failed to fully consider or abused its discretion when considering the merits of appellant's motion. Accordingly, appellant's third assignment of error is not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Williams County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., Richard W. Knepper, J.,
Mark L. Pietrykowski, J., CONCUR.
[1] Crim.R. 11(C)(2) provides:
 "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."