OPINION
Defendant-appellant, James T. Smith, Jr., appeals from the June 21, 1999 judgment of the Franklin County Court of Common Pleas, finding him guilty of one count of sexual battery and sentencing him to five years in prison. For the reasons that follow, we reverse and remand the matter in order for the trial court to conduct a hearing on appellant's motion to withdraw his guilty plea.
Appellant was indicted by the Franklin County Grand Jury on one count of sexual battery in violation of R.C. 2907.03. On June 17, 1999, appellant, to avoid the consequences of going to trial, entered a plea of guilty to the single count of sexual battery pursuant to North Carolina v. Alford (1970), 400 U.S. 25.
According to the prosecution's proffer of the facts, the victim, Martha Adkins, had gone to her boyfriend's apartment at 4:00 in the morning on February 10, 1999, and found several people there including appellant. The victim had been drinking and was intoxicated. The prosecution continued with its proffer as follows:
 Ms. Adkins stated that she engaged in consensual intercourse with her boyfriend, Todd Workman, and then passed out on his bed.
 Ms. Adkins recalled being awakened by a male on top of her engaging in vaginal intercourse. At first she believed this individual to be her boyfriend, Todd Workman, however, quickly realized that it was not her boyfriend, but this person who had been introduced to her as James Smith.
 Ms. Adkins pushed Mr. Smith off of her and demanded that he stop. He did exit the bedroom. [Tr. 10.]
A detective at Riverside Hospital interviewed the victim at 6:25 that evening. Upon further investigation, the detective located an acquaintance to whom appellant admitted having intercourse with Ms. Adkins.
When a SWAT team executed an arrest warrant, appellant attempted suicide by taking an overdose of prescription medicine and drinking chlorine bleach, resulting in transfer to St. Ann's Hospital and University Hospital for treatment.
On February 22, 1999, appellant was questioned at police headquarters where according to the prosecution's proffer:
 [H]e admitted to being in bed with Ms. Adkins and grinding his bare penis against her bare vagina. However, he did deny penetrating her vagina even slightly. He indicated that Ms. Adkins was intoxicated but alleged that the sexual contact was consensual.
 Mr. Smith admitted that Ms. Adkins did tell him that she thought that he was her boyfriend, Mr. Workman. [Tr. 11-12.]
The trial court accepted appellant's plea and proceeded immediately to sentence appellant. Given a chance to address the trial court, appellant stated in part:
 Well, I guess this is a time where you are supposed to really talk to you and get you to give me less time, but I'm not going to do that. I really wanted to talk to you because, first off, the only reason why I entered this guilty plea is I didn't want to die. I know if I went back to jail, did all of that time for something I didn't do, and which I know I can prove that I didn't do, that I would kill myself because that was just how I am about it. [Tr. 14-15.]
The trial court was familiar with appellant, as he had previously been placed on probation by the trial court judge. The trial court indicated that it was disappointed in appellant's lack of progress as he was "the only person that in six-and-a-half years that I have given that many breaks to." (Tr. 16.) Appellant then attempted to explain why he violated curfew, which was a condition of his probation in another case. Appellant indicated that his violation was a result of a situation in his family that had him on the verge of suicide. (Tr. 17.)
The trial court then began to state findings supporting the sentence about to be imposed. Appellant took exception, interrupting and asserting that he now wanted to proceed to trial. The trial court responded, "I'm not withdrawing his guilty plea. I have already accepted the guilty plea." (Tr. 21.) The trial court proceeded to state its findings and imposed the maximum term of imprisonment, five years. The trial court also terminated his probation in another case and found appellant to be a sexually oriented offender. After the trial court disposed of those matters, appellant made a final outburst, stating to the trial court: "You are a horrible person. You are a horrible judge." (Tr. 27.) Appellant then stated, "I would love to go to trial."Id. The trial court then ordered appellant removed from the courtroom "before I take back his sentence * * * and sentence him to more time." Id.
Appellant filed a timely notice of appeal from the June 21, 1999 judgment entry, assigning as error the following:
 The court erroneously refused to allow appellant to withdraw his guilty plea.
Appellant argues that his motion to withdraw his guilty plea was made in a timely manner, as sentence had not yet been imposed, but the trial court abused its discretion by refusing to allow appellant to withdraw his plea or to hold a hearing on the motion. Appellant argues that there would have been no prejudice to the state had the motion been granted as the plea was entered on the trial date, and presumably the state was prepared to proceed to trial. Appellant further argues that his counsel was given no opportunity to consult with appellant to ascertain and articulate his reasons for wanting a trial, nor did the trial court state its rationale in overruling the motion. Appellant's counsel also argues that appellant's mental condition was problematic as he had contemplated and attempted suicide. Appellant protested his innocence throughout the proceedings, yet made the cryptic statement that he had entered the plea because he did not want to die, and had contemplated suicide if jailed for something that he had not done.
The state responds that appellant entered his guilty plea in order to test the potential weight of the punishment. The state contends that only when it became clear that the trial court was not going to be lenient did appellant seek to withdraw his guilty plea.
In Alford, the United States Supreme Court held that, under certain circumstances, a defendant may plead guilty to an offense despite continued protestations of innocence. Thus, it has been held that an Alford plea is "merely a species of guilty plea." State v. Carter (1997), 124 Ohio App.3d 423, 429. As such, Crim.R. 32.1 governs the withdrawal of the plea. Crim.R. 32.1 provides, in pertinent part:
 A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
Here, although the trial court did not explain whether it considered the motion to be presentence or postsentence, we believe the record shows that appellant moved to withdraw his guilty plea prior to the imposition of sentence. As such, the Ohio Supreme Court has explained that a presentence motion to withdraw a guilty plea should be freely and liberally granted. However:
 1. A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.
 2. The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court. [State v. Xie (1992), 62 Ohio St.3d 521, paragraphs one and two of the syllabus.]
In this case, it is clear from the record that the trial court did not afford appellant a hearing on his motion, and he was not afforded a full, fair and careful consideration of his motion. See State v. Bekesz (1991), 75 Ohio App.3d 436, 440-441 (trial court abused its discretion in denying even to consider appellant's motion).
Moreover, pleas accompanied by protestations of innocence give rise to an inherent suspicion that a knowing, voluntary and intelligent waiver has not occurred. State v.Jackson (Apr. 13, 2000), Marion App. No. 0-99-50, unreported (Shaw, J. concurring). Alford pleas place a heightened duty on the trial court to ensure that the defendant's rights are protected and that entering the plea was a rational decision on the part of the defendant. Id., citing State v. Padgett (1990),67 Ohio App.3d 332, 337-338.
The record of the proceedings in this case reflects that appellant made confusing statements before the trial court. In particular, he stated that he was innocent, that he entered his plea because he "did not want to die," and if sent to jail for something he did not do, he contemplated suicide. (Tr. 14-15.) Upon remand, and a hearing on appellant's motion, it may become clear that appellant indeed decided to plead guilty to "test the waters" as to what punishment he would receive. But based on the record before us, and the Ohio Supreme Court syllabus law that the trial court "must conduct a hearing," we find that it was error for the trial court to deny appellant's motion without first conducting a hearing.
Accordingly, appellant's assignment of error is sustained in part, overruled in part, and the matter is remanded for the trial court to conduct a hearing to determine if there is a reasonable and legitimate basis for the withdrawal of the plea.
Judgment reversed and remanded with instructions.
 ________________________ LAZARUS, J.
KENNEDY and BRYANT, JJ., concur.