OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Godwin Banjoko ("Banjoko"), filed December 15, 2006. Banjoko was originally charged with two criminal offenses: domestic violence in violation of R.C. 2919.25, and violating a temporary protection order in violation of R.C. 2919.27.
 {¶ 2} Banjoko plead not guilty to both counts and defense of the charges was accepted *Page 2 
by an attorney with the Public Defender's Office. Banjoko subsequently decided to hire private counsel and on August 21, 2006, new counsel, Jay Adams, filed a substitution of counsel and motion to continue the previously scheduled trial. The trial court reset the trial for October 10, 2006, at which time a plea bargain was offered to Banjoko and the matter was reset for plea pursuant to negotiations. However, all plea offers were later withdrawn by the State, and the trial was rescheduled for November 16, 2006. On November 15, 2006, Mr. Adams, without Banjoko's knowledge, withdrew as counsel.
 {¶ 3} Banjoko appeared for trial on November 16, 2006, without counsel. After a short recess Countess Taylor of the Public Defender's Office was re-appointed as Banjoko's counsel. Ms. Taylor had represented Banjoko prior to Mr. Adams. After consulting with Ms. Taylor, Banjoko entered an Alford plea of guilty to one count of domestic violence in exchange for the prosecution dropping the charge of violating a temporary protection order. Banjoko was sentenced to thirty days in jail, with twenty days suspended. Banjoko was also ordered to undergo a mental health assessment, assessed a $1,000 fine, $900 of which was suspended, and placed on probation for a period of one year. It is from this plea that Banjoko appeals.
 {¶ 4} Banjoko's First Assignment of Error is as follows:
 {¶ 5} "THE TRIAL COURT ERRED IN FAILING TO GRANT CONTINUANCE OF APPELLANT."
 {¶ 6} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge; an appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Ahmed (2004),103 Ohio St.3d 27, 34, 813 N.E.2d 637, 650, 2004-Ohio-4190. In evaluating a motion for continuance, *Page 3 
"several factors can be considered: the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." Id. citing State v. Landrum (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710.
 {¶ 7} Banjoko argues that the trial court erred by not granting a continuance because of Mr. Adams' withdrawal from the case, without notification, just a day prior to the commencement of trial. Banjoko's position is that the trial court should have continued the case instead of re-appointing the public defender. We note that the record reflects Mr. Adams withdrew "due to lack of cooperation and meaningful discussions between counsel and client." Additionally, Banjoko complains that he was given only thirty minutes to consult with Ms. Taylor. He contends that the trial court abused its discretion by not rescheduling his trial and by forcing him to proceed without the counsel of his choice.
 {¶ 8} In deciding to go forward with the proceedings the trial court placed emphasis on a number of facts, including Banjoko's role in prior continuances, the inconvenience that another continuance would create for witnesses, and Ms. Taylor's familiarity with the case. We note that Banjoko's plea and/or trial had been previously scheduled three times. Further, Banjoko stated that he was satisfied with Ms. Taylor's advice when asked by the trial court at the plea hearing. Furthermore, and more importantly, Banjoko never made a formal request of the trial court for a continuance, nor did he object to Ms. Taylor's representation following the withdrawal of his private counsel. Banjoko's failure to object at the trial level waives the error asserted. See State v.Goldman, Clark App. No. 2006 CA 103, 2007-Ohio-6682, ?37, citingState v. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus. *Page 4 
 {¶ 9} For the foregoing reasons, Banjoko's first assignment of error is overruled.
 II {¶ 10} Appellant's Second Assignment of Error is as follows:
 {¶ 11} "THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S ALFORD PLEA, WHEN UNDER THE CIRCUMSTANCES SAID PLEA WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE."
 {¶ 12} A defendant who maintains his innocence may, nevertheless, plead guilty to the offense with which he is charged. North Carolina v.Alford (1970), 400 U.S. 25, 91 S.Ct. 160. A defendant who believes himself to be innocent of the charges against him may rationally conclude that the evidence against him is so incriminating that there is a significant likelihood that a jury would find him guilty of the offense. Id. Consequently, the defendant may rationally conclude that accepting a plea bargain is in his best interests, since he will avoid the risk of greater punishment if found guilty by a jury. Id. When a defendant so chooses to enter this plea, it is known as an Alford plea of guilty.
 {¶ 13} The proper procedure for accepting an Alford plea was set forth by this Court in State v. Padgett (1990), 67 Ohio App.3d 332,586 N.E.2d 1194. We found that, "where the defendant interjects protestations of innocence into the plea proceedings, and fails to recant those protestations of innocence, the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent. This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the *Page 5 
defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty." Id. at 338-339.
 {¶ 14} At the plea hearing the trial judge discussed an Alford plea, and its consequences with Banjoko. The following is a pertinent section of that discussion:
 {¶ 15} "Judge: * * * you are denying that you actually did this; however, based upon the risk of going to trial and based upon the possible financial obligations you might have to have * * * you would prefer to enter a guilty plea as opposed to going to trial in the event that you would be found guilty. Is that correct, is that your understanding?
 {¶ 16} "Banjoko: yes.
 {¶ 17} "* * *
 {¶ 18} "Judge: Okay. Based on that, you still have to be advised of the fact that by entering a guilty plea I will be finding you guilty on this matter even though it's pursuant to Alford v. North Carolina. I will still be making a finding of guilty on the file and I will be sentencing you. You understand that?
 {¶ 19} "* * *
 {¶ 20} "Banjoko: Yes, sir
 {¶ 21} "Judge: * * * Furthermore, you're doing this * * * after speaking with your counsel and * * * going over the risks involved and after talking to her about your case you've decided that you are going menter into this plea. Is this correct?
 {¶ 22} "Banjoko: That is correct.
 {¶ 23} "Judge: All right. And you're satisfied with her [Ms. Taylor] representation. *Page 6 
Correct?
 {¶ 24} "Banjoko: Correct.
 {¶ 25} "* * *
 {¶ 26} "Judge: And so as I understand it you're willing to give up your constitutional rights in order to enter into this plea agreement pursuant to Alford v. North Carolina. Is that correct?
 {¶ 27} "Banjoko: Yes, sir."
 {¶ 28} In light of this exchange we conclude that the trial court made a satisfactory inquiry into Banjoko's reasons for entering this plea despite his protestations of innocence. Thus, it correctly determined that Banjoko made a rational calculation to plead guilty not withstanding his belief that he was innocent. Therefore, we find that the trial court did not err in accepting Banjoko's Alford plea of guilty.
 {¶ 29} Banjoko also argues that an Alford plea is procedurally indistinguishable from a traditional guilty plea. Consequently, before its acceptance, a trial court must strictly comply with the constitutional requirements of Crim. R. 11. Banjoko contends that the trial court did not comply with Crim. R. 11 because it failed to advise him of his right to a jury trial, or that he was eligible for probation or community control sanctions. Additionally, Banjoko contends that the trial court erred by neither asking if he was making his plea voluntarily, nor making a specific finding that his plea was voluntary. Under the totality of the circumstances, including the withdrawal of appellant's counsel, Banjoko asserts that his Alford plea was not voluntarily made.
 {¶ 30} We agree that the trial court must comply with the requirements of Crim. R. *Page 7 
11 before accepting an Alford plea of guilty. Banjoko entered his plea to one misdemeanor count of domestic violence. Crim. R. 11(D) sets out the requirements for accepting a guilty plea in a serious misdemeanor case. It states in pertinent part that the court, "shall not accept such plea without first addressing the defendant personally and informing the defendant of the effect of the plea of guilty * * * and determining that the defendant is making the plea voluntarily." Informing appellant of his right to a jury trial, and that he was eligible for probation or community control sanctions are only required under Crim. R. 11(C) when accepting a plea of guilty in a felony case. Thus, Banjoko's reliance on Crim. R. 11(C) is misplaced. After a review of the transcript from the plea hearing we are satisfied that the trial court complied with the requirements set forth in Crim. R. 11(D). The record affirmatively demonstrates Banjoko's plea was not just knowing and intelligent, but voluntary as well.
 {¶ 31} For the foregoing reasons, Banjoko's second assignment of error is overruled.
 III {¶ 32} Banjoko's first and second assignments of error having been overruled, the judgment of the trial court is Affirmed.
 WOLFF, P.J. and GRADY, J., concur. *Page 1