[Cite as *State v. Martin*, 2026-Ohio-954.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-35 |
| Appellee | : | |
| | : | Trial Court Case No. 25-CR-283 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JOSHUA BRICE MARTIN | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 20, 2026, the trial court's judgment is reversed, and the matter is remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

LUCAS W. WILDER, Attorney for Appellant
JOHN M. LINTZ, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Joshua B. Martin appeals his conviction of one count of attempted murder, a felony of the first degree, which followed his *Alford* plea. Martin argues the trial court erred in accepting his *Alford* plea because the trial court failed to inquire into the State's evidence or counsel's investigation of the case and therefore did not have a sufficient factual basis to conclude that Martin's *Alford* plea was knowing, intelligent, and voluntary. Additionally, Martin appeals the trial court's denial of his pre-sentence motion to withdraw his plea.

**I. Facts and Course of Proceedings**

{¶ 2} On March 27, 2023, Martin was indicted for murder, felonious assault, and discharging a firearm on or near a prohibited premises for an alleged shooting that occurred on July 24, 2021. Indictment, Clark C.P. No. 2023 CR 0183. Each count contained a firearm specification that stated Martin committed the offense by discharging a firearm from a motor vehicle. *Id*. The indictment did not name a victim or use initials in any of the charges. *Id*. At arraignment, Martin entered a not guilty plea and was appointed counsel.

{¶ 3} On November 6, 2024, the State filed a bill of particulars that provided a more factually detailed account of the State's case. The bill of particulars stated:

> On about July 24, 2021, officers were dispatched to the area of E Grand Ave and Clifton Ave for reports of shots fired. Officers arrived and saw an individual suffering a gunshot wound and a crashed vehicle. The individual was later

identified as Brett Love. It was determined that Josh Martin was in the vehicle and was giving chest compressions to Brett Love; however, [he] later left. As the day progressed, Brett Love succumbed to his wound and was pronounced deceased. Further investigation through eyewitness testimony, social media data, and ballistic reports revealed that Josh Martin was inside the vehicle with Brett Love and was shooting at another individual. That individual returned fire and killed Brett Love.

{¶ 4} On November 27, 2024, Martin filed a notice of self-defense. In his notice, Martin stated that Robert Gilbert was shooting at Martin's car and fired shots into Martin's house, and that when Gilbert saw Love and Martin, Gilbert intended to kill them both. Martin's notice of self-defense indicated that he intended to call four witnesses at trial: Rhonesia Martin, Brittany Johnson, Jocelyn Greene, and De'Aiyzia Carter.

{¶ 5} Martin's jury trial was scheduled for April 15, 2025; however, seven days before the trial, Martin was reindicted. Indictment, Clark C.P. No. 2025 CR 0283. The July 24, 2021 date of the offenses remained the same; but he was charged with the additional offenses of attempted murder, felonious assault, and tampering with evidence. *Id*. Additional gun specifications were added to the charges of attempted murder, felonious assault, and murder. *Id*. The indictment again did not provide a name or use initials to identify a victim associated with the charges. *Id*.

{¶ 6} At 9 a.m. on the morning of Martin's jury trial on April 15, 2025, the trial court was informed that a negotiated plea agreement had been reached and that Martin intended to enter an *Alford* plea. Under the agreement, Martin would tender an *Alford* plea to attempted murder, and in exchange, the State would dismiss the remaining counts and all

gun specifications. There was no agreement regarding Martin's sentence. Instead, the State agreed to remain silent at sentencing.

{¶ 7} When the trial court asked Martin's counsel if the State's recitation of the plea agreement was his understanding, Martin's counsel stated "I want the Court to be aware that Mr. Martin is not admitting that he did anything wrong here. He [is] just taking advantage of what he believes to be a better deal in—a better deal tha[n] he would have by pleading than going to trial." Plea Hearing Tr. 4. Thereafter, the trial court provided the usual advisements under Crim.R. 11 that accompany a guilty plea, but not the advisements attendant to an *Alford* plea. *Id.*

{¶ 8} When the trial court asked the State to provide a factual statement on the record supporting the charge of attempted murder, the State merely stated, "On July 24, 2021, the Defendant was a passenger in a motor vehicle when he purposefully shot a firearm at Robert Gilbert in an attempt to kill him. This all happened in the area of Grand Avenue and Clifton Avenue in Clark County, Ohio." Plea Hearing Tr. 20.

{¶ 9} After the State's succinct recitation of the facts, the trial court failed to ask Martin any questions. The trial court also did not discuss Martin's self-defense claim. The trial court did not ask the State to provide details of the evidence it had supporting the charge of attempted murder, nor did it ask Martin's counsel what he learned during his investigation of the evidence in the case. Instead, the trial court stated, "The Court, after placing the indictment on the record and hearing the facts that would support that, does find that there is sufficient evidence for the conviction of attempted murder." *Id.* at 20. The court ordered a presentence investigation report and set the matter for sentencing on May 6, 2025.

{¶ 10} On May 5, 2025, the day before Martin's sentencing hearing, Martin filed a motion to withdraw his plea indicating that he had made a mistake in entering his *Alford* plea

4

and that he wanted to have a jury trial on all charges. Prior to sentencing Martin on May 6, 2025, the trial court heard arguments from Martin's counsel and the State regarding the motion to withdraw the plea. The trial court overruled the motion.

{¶ 11} Prior to imposing sentence, the trial court allowed Martin's counsel to present evidence in mitigation. Martin's counsel presented to the trial court evidence in the case, including Defendant's Exhibits A through S. Of note, according to the record, Martin was a front seat passenger in a vehicle driven by Brett Love, the deceased. On July 24, 2021, Love drove past Robert Gilbert and fired two shots out of the passenger side window of the vehicle. As Martin and Love drove away, Gilbert fired eight shots at Love's vehicle, with one of the bullets penetrating the rear of the vehicle and going into the back of Love's head. Five witnesses who were interviewed by law enforcement did not indicate that Martin fired any shots.

{¶ 12} After hearing approximately one hour of evidence in the case, the trial court asked Martin if there was anything he would like to say prior to sentencing, to which Martin responded that he was "truly innocent in this situation." Sentencing Tr. 43. The court sentenced Martin to an indefinite prison term of eight to twelve years. This appeal followed.

{¶ 13} Martin raises two assignments of error related to his *Alford* plea. However, as set forth below, because we hold that Martin's *Alford* plea was not knowing, intelligent, and voluntary, we do not address the trial court's denial of Martin's pre-sentence motion to withdraw his plea.

**II. Martin's Assignment of Error**

{¶ 14} Martin's first assignment of error states:

**MARTIN DID NOT ENTER A KNOWING, INTELLIGENT, AND VOLUNTARY**

***ALFORD* PLEA AND THE TRIAL COURT FAILED TO COMPLY WITH THE**

5

**CONSTITUTIONAL STANDARDS FOR ACCEPTING [MARTIN'S] ALFORD PLEA.**

{¶ 15} Martin argues the trial court erred by accepting his *Alford* plea because the court failed to obtain a sufficient factual basis for the offense, and therefore, failed to weigh whether the evidence was strong enough against Martin's claim of innocence to determine that Martin's plea was knowing, intelligent, and voluntary.

### III. *Alford* Plea and Its Requirements

{¶ 16} In *North Carolina v. Alford*, 400 U.S. 25 (1970), the United States Supreme Court held that a defendant who maintains his innocence may, nevertheless, enter a plea to an offense or offenses with which he is charged. The Court held that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime" when the "defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* at 37.

{¶ 17} In discussing *Alford*, the Supreme Court of Ohio noted that a court "'will accept a plea of guilty, even though defendant accompanies his plea with a statement that he is not guilty, on a determination that incriminatory evidence establishes such a high probability of conviction as to satisfy the requirement that there be a "factual basis for the plea" before judgment can be entered thereon.'" *State v. Piacella*, 27 Ohio St.2d 92, 94 fn. 1 (1971), quoting *Bruce v. United States*, 379 F.2d 113, 119 (D.C.Cir. 1967).

{¶ 18} While the Supreme Court of Ohio did not discuss the heightened requirements of a trial court when taking an *Alford* plea, the Court held "[w]here the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was

6

competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." *Id*. at paragraph one of the syllabus. If the record of an *Alford* plea fails to include any one of these factors, the plea is involuntary and will be vacated. *State v. Padgett*, 67 Ohio App.3d 332 (2d Dist. 1990).

{¶ 19} We have previously discussed a trial court's duty in accepting an *Alford* plea, stating "[b]ecause an *Alford* plea involves a rational calculation that is significantly different from the calculation made by a defendant who admits he is guilty, the obligation of the trial judge with respect to the taking of an *Alford* plea is correspondingly different. The trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor." *Id*. at 338.

{¶ 20} We explained that taking an *Alford* plea "requires more than a routine litany." *Id*. "This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty." *Id*. at 338-339.

{¶ 21} "'Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, [citations omitted]; and until the judge

7

taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence.'" (Bracketed text in original.) *Padgett*, 67 Ohio App.3d at 338, quoting *Alford*, 400 U.S. at 38, fn. 10.

### IV. Discussion

{¶ 22} As held by *Alford*, before accepting an *Alford* plea, a trial court, after a presentation of facts, must make a determination that the record "contains strong evidence of actual guilt" to safeguard a defendant's constitutional right to enter a plea knowingly, intelligently, and voluntarily. *Alford*, 400 U.S. at 37. In *Alford*, the defendant's plea was properly accepted by the trial court based on a sufficient factual basis for the plea:

> The defendant in *Alford* was charged with first-degree murder, a capital offense. The defendant entered a guilty plea to a reduced charge of murder in the second degree, which involved a lesser penalty. The record showed that defendant's attorney had interviewed the witnesses whom defendant claimed would substantiate his innocence, and each gave contradictory statements that strongly indicated his guilt. Defendant's attorney recommended the guilty plea to the lesser offense, but left the decision to defendant. Before defendant's guilty plea was accepted by the court, the court heard the sworn testimony of a police officer who summarized the State's case, plus the testimony of two other witnesses who stated that defendant had left home with his gun after stating that he intended to kill the victim and returned later, declaring that he had carried out the killing. Defendant took the stand, told his version of the events that contradicted the State's evidence, and stated "that he was pleading guilty because he faced the threat of the death penalty if he did not do so." [*Alford*, 400 U.S. at 28.] He also stated that he relied on his

8

attorney's recommendation in making the decision to plead guilty. And, defendant filed a petition for post-conviction relief on which the trial court had conducted an evidentiary hearing, after which the trial court denied the petition on a finding that "the plea was 'willingly, knowingly, and understandingly' made on the advice of competent counsel and in the face of a strong prosecution case." [*Id*. at 29.] Based on these factors, the *Alford* Court found that the Defendant's guilty plea was valid.

*State v. Gossard*, 2003-Ohio-3770, ¶ 9 (2d Dist.).

{¶ 23} We have applied and followed *Alford* on numerous occasions and affirmed a trial court's acceptance of an *Alford* plea when the trial court required a sufficient factual basis to support the offense being pleaded to and determined that the defendant was making his plea voluntarily, despite the defendant's failure to admit guilt or continued affirmations of being innocent. We have previously included a large portion of a trial court's record in our opinion "to exhibit a textbook example of how to conduct a plea hearing with an *Alford* situation." *State v. Williams*, 1993 WL 102632, *5 (2d Dist.). To summarize, in *Williams*, the trial court required the prosecutor to explain the evidence he possessed that supported the charge against the defendant. The prosecutor recited the witnesses who would testify and the nature of their testimony, which included identification of a palm print and a fingerprint found at the scene as the defendant's. The trial court engaged in a lengthy dialogue with the defendant, asking him if he had talked to his attorney about the risk of going to trial versus entering a plea when he believed he did not commit the offense.

{¶ 24} We have similarly upheld a trial court's determination that a defendant's *Alford* plea was voluntarily made after the trial court heard evidence from the prosecutor that supported the charge against the defendant. *State v. Adkins*, 2015-Ohio-4605 (2d Dist.). In

9

that case, the trial court received summaries of the State's case and witness testimony, and it heard that the State had photographs and medical records of the victim documenting her injuries. The trial court found that "the state had strong evidence indicating guilt and that there was a [sufficient] factual basis for the plea." *Id*. at ¶ 16.

{¶ 25} Likewise, we affirmed the voluntariness of an *Alford* plea when the trial court noted that in taking an *Alford* plea,

> it needed "to investigate the strength of the State's case by having a case detective * * * take the witness stand and, under oath, summarize the evidence that was accumulated by the State," to hear from defense counsel about what he had done "to investigate the strength of the State's case" and whether counsel recommended the plea to [the defendant], and to hear from [the defendant] himself about "why he want[ed] to enter into this plea agreement and enter into the *Alford* plea of guilt."

*State v. Schalk*, 2020-Ohio-3392, ¶ 6 (2d Dist.), quoting the trial court. The trial court heard testimony from the detective assigned to the defendant's case and sought from defense counsel a detailed account of his investigation into the strength of the state's case as well as his legal recommendation to the defendant. *Id*. at ¶ 7-10, 12. The trial court also asked the defendant to explain why he was entering his *Alford* plea. *Id*. at ¶ 13.

{¶ 26} By contrast, we have vacated *Alford* pleas as involuntarily made when trial courts failed to inquire into the evidence supporting the charge. We have also found trial courts deficient in accepting *Alford* pleas when they did not determine that the defendant's decision to plead was a rational calculation to plead notwithstanding the defendant's affirmations of being innocent. This court previously determined there was an insufficient factual basis upon which the trial court could have accepted an *Alford* plea to rape when the

10

State's recitation of evidence merely stated that the defendant had "licked (the victim's) vaginal area." *State v. Gossard*, 2003-Ohio-3770, ¶ 14-15 (2d Dist.).

{¶ 27} In reversing the defendant's *Alford* plea in *Gossard*, we stated that "the record does not portray what, if anything, Gossard's counsel did to investigate the strength of the State's case. The record does not reflect that Gossard's attorney recommended the guilty plea. The court heard no sworn testimony concerning the evidence against Gossard but instead relied on a summary of evidence the prosecutor presented, which represented to the court in general terms that Gossard had admitted his criminal conduct to investigating officers. Gossard never stated or explained what his motivation was for entering the *Alford* plea, instead giving only monosyllabic responses to the trial court's leading questions on the matter." *Id*. at ¶ 10.

{¶ 28} Other courts have vacated *Alford* pleas when the trial court failed to adequately determine that there was a sufficient factual basis to support the charge or charges underlying the *Alford* pleas. *See State v. Hughes*, 2021-Ohio-111, ¶ 2 (4th Dist.) ("The intelligence and voluntariness of an *Alford* plea must be established by evidence in the record supporting guilt. Because of the complete absence of the basic facts surrounding the charge, the trial court could not evaluate the intelligence and voluntariness of Hughes's decision to plead guilty notwithstanding his insistence of innocence. Because the record does not disclose all of the required factors for finding Hughes voluntarily, knowingly, and intelligently entered into the *Alford* plea, we sustain his assignment of error, vacate his plea, and remand this case."); *State v. Timmons*, 2019-Ohio-2723, ¶ 11 (7th Dist.) ("Because the record does not support a finding that the trial court properly held a heightened *Alford* inquiry, and because the state failed to provide background information as to the facts and evidence

11

of the case, we cannot find that Appellant entered into his *Alford* plea knowingly, intelligently, and voluntarily.").

{¶ 29} Turning to the record in this case, the trial court failed to require the state to present a sufficient factual basis to support the charge of attempted murder. The plea hearing transcript reveals that the state stated, "On July 24, 2021, the Defendant was a passenger in a motor vehicle when he purposefully shot a firearm at Robert Gilbert in an attempt to kill him. This all happened in the area of Grand Avenue and Clifton Avenue in Clark County, Ohio." Plea Hearing Tr. 20. The mere recitation of an indictment is insufficient to establish an adequate factual basis to support a charge for the purposes of taking an *Alford* plea. The trial court lacked a sufficient factual basis to accept Martin's *Alford* plea to attempted murder.

{¶ 30} The record in this case also reveals that the trial court failed to make any inquiry into defense counsel's investigation of the State's evidence or to ask Martin specific questions regarding his desire to plea as opposed to going to trial. The plea colloquy lacked any dialogue with Martin or his counsel regarding the evidence to be presented at trial regarding self-defense. Nor did the trial court discuss with Martin the State's burden to prove at trial that he did not act in self-defense. The trial court did not make any specific findings that the state had strong evidence indicating guilt before accepting Martin's *Alford* plea. As a result, the trial court failed to adequately determine that Martin made a rational calculation to submit a plea notwithstanding his belief that he is innocent of the charge.

{¶ 31} While the State urges this court to affirm Martin's plea arguing that the record shows the existence of all five factors set out by *Piacella*, we disagree. Because the trial court failed to inquire into defense counsel's investigation of the case or counsel's recommendations to Martin regarding his decision to plead versus going to trial on self-

12

defense—or any other defense theory—the record does not show that counsel's advice was competent in light of the circumstances surrounding the indictment or that Martin's decision to plea was made with the understanding of the nature of the charges. Although it might be true that Martin was motivated to accept a lesser penalty by pleading instead of risking guilty verdicts on all counts with accompanying firearm specifications, the record before us does not clearly and unequivocally establish this. *Adkins*, 2015-Ohio-4605, at ¶ 13 (2d Dist.), quoting *Gossard*, 2003-Ohio-3770, at ¶ 12 (2d Dist.) ("'a Defendant's decision to enter the plea against his protestations of factual innocence [must be] clearly and unequivocally supported by evidence that he exercised that calculus for the purpose of avoiding some more onerous penalty that he risks by, instead, going to trial on the charges against him.'").

**{¶ 32}** Accordingly, we cannot conclude on this record that Martin's plea was knowing, intelligent, and voluntary. We therefore sustain Martin's first assignment of error. Given that we have sustained Martin's first assignment of error regarding his plea, we need not address whether the trial court erred in overruling his pre-sentence motion to withdraw his plea, and his second assignment of error is moot.

**V. Conclusion**

**{¶ 33}** Having sustained Martin's first assignment of error, his plea is vacated, the trial court's judgment is reversed, and the matter is remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.

13