[Cite as *State v. Schalk*, 2020-Ohio-3392.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28425 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-456 |
| | : | |
| MARVIN K. SCHALK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of June, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, P.O. Box 574, Dayton, Ohio 45409
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Marvin K. Schalk appeals from his conviction on three counts of rape and one count of gross sexual imposition (GSI) (victim under age 13). Schalk was convicted after he entered guilty pleas in accordance with *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("*Alford* pleas") on the rape counts as set for in a bill of information and on the GSI as charged in an indictment.[1] We hereby affirm the judgment of the trial court.

{¶ 2} Schalk was indicted on February 13, 2018, on three counts of rape (by force or threat of force) in violation of R.C. 2907.02(A)(2), all felonies of the first degree, and one count of gross sexual imposition (GSI) in violation of R.C. 2907.05(A)(4), a felony of the third degree; each of the counts in the indictment specified that the victim was under 13 years of age at the time of the offense. The trial court entered a plea of not guilty on Schalk's behalf. On March 13, 2018, Schalk's attorney requested competency and sanity evaluations, and the court ordered the evaluations. On May 1, 2018, Schalk's attorney requested a second evaluation of Schalk's mental condition at the time of the offense; on May 10, 2018, the trial court granted this motion. On July 9, 2018, the court found Schalk competent to stand trial.

{¶ 3} On June 20, 2018, Schalk's attorney filed a motion to suppress Schalk's statements to law enforcement officers. Following a hearing, the court overruled the

---

[1] The essence of an *Alford* plea is that a defendant enters a guilty plea notwithstanding his or her "protestations of factual innocence," with a purpose to avoid some more onerous penalty that he or she risks by going to trial on the charges against him or her. *State v. Gibson*, 2d Dist. Clark No. 2013-CA-112, 2014-Ohio-5573, ¶ 8, quoting *State v. Gossard*, 2d Dist. Montgomery No. 19494, 2003-Ohio-3770. There are additional procedural requirements prior to the trial court's acceptance of an *Alford* plea. *State v. Mapes*, 2d Dist. Champaign No. 09CA19, 2010-Ohio-4042, ¶ 63.

motion on October 17, 2018.

{¶ 4} Trial was scheduled for April 8, 2019. On that date, although prospective jurors had been called, the court indicated on the record that Schalk intended to enter *Alford* pleas and that he had "just" been served with a bill of information. With respect to the rapes, the bill of information omitted the fact that the victim had been less than 13 years of age, and the court noted that Schalk's *Alford* pleas would be entered on the three rape charges as set forth in the bill of information. The court also indicated that Schalk would enter an *Alford* plea to the GSI as charged in the indictment (with the victim being under the age of 13 at the time of the offense). There was no agreement as to sentencing except that the GSI sentence would run concurrently with the rape sentences.

{¶ 5} In the course of his plea colloquy, Schalk informed the Court that he was 42 years old, had obtained his GED, and had attended some college. Schalk indicated that he was not under the influence of any drugs or medications and there was no mental or physical condition affecting his ability to understand the proceedings. The court noted that Schalk was on post-release control and that the plea agreement provided the court would not impose any sanction on Schalk for a post-release control violation, but it also noted that "the Adult Parole Authority has some authority over" Schalk and he could "conceivably receive a sanction from the Adult Parole Authority" because he was on post-release control.

{¶ 6} The court noted that, in taking an *Alford* plea, it needed "to investigate the strength of the State's case by having a case detective * * * take the witness stand and, under oath, summarize the evidence that was accumulated by the State," to hear from defense counsel about what he had done "to investigate the strength of the State's case"

and whether counsel recommended the plea to Schalk, and to hear from Schalk himself .about "why he want[ed] to enter into this plea agreement and enter into the *Alford* plea of guilt." The court also ascertained that Schalk was willing to waive his right to a grand jury on the charges in the bill of information and to waive the 24-hour waiting period, and Schalk signed the waiver forms.

{¶ 7} The State called Detective Travis Abney of the Riverside Police Department, who testified that in December 2017, he was assigned to investigate allegations made against Schalk by his daughter, who was born in June 2005. Abney testified that Schalk's daughter, E., was 12 years old during the time period set forth in the indictment, namely July through December 2017. Abney was assigned to investigate the case after Officer Waller initially met with members of E.'s family and took their statements.

{¶ 8} Abney testified that, as a matter of police protocol, taking into account the daughter's age and "the nature of the accusations," he arranged for her to be interviewed at CARE House, where forensic interviewers are specially trained to interview children. Abney testified that he observed the interview. E. disclosed that Schalk had reentered her life in the summer of 2017; she initially had daytime visits with him, which progressed to overnight visits every other weekend; her mother and step-father confirmed the visitation schedule. E. disclosed that Schalk sexually abused her during these visits.

{¶ 9} According to Abney, E.'s brother accompanied E. on the visits; E. would sleep with her father, and her brother would sleep in the living room on the couch. Three other relatives also lived with Schalk in the three-bedroom home. E. disclosed during the CARE House interview that at night or when she seemed to be asleep, she would wake up to find her father doing inappropriate things to her. She mentioned that he was

touching "her private area," including touching her vagina with his fingers, and "that he used his mouth on her private area." She said that, during the last encounter, "he tried to insert his penis into her vagina." Schalk also rubbed her thighs and breasts. Abney testified that E. recounted that Schalk had also touched his own penis while in bed with her. E.'s overnight visits with Schalk ended in December 2017.

{¶ 10} Abney also testified that he interviewed Schalk, who voluntarily appeared at the Riverside Police Department on January 3, 2018. Abney advised Schalk of his rights, and Schalk agreed to speak to him. Abney described Schalk's demeanor as "normal" and "polite." Abney testified that Schalk initially denied the allegations and "insinuate[d] that there were possibly things that had been misunderstood by [E.]" and that there were "missing pieces" to the events as recounted by Abney. Abney testified that E. stated that the abuse occurred "most of the times that she stayed" at Schalk's home, and that "the more recent times were longer in duration." Abney testified that E. viewed the final incident as the most traumatic when Schalk attempted to insert his penis into her vagina, which was painful.

{¶ 11} The prosecutor advised the court that the three counts of rape in the bill of information correlated to digital penetration of E.'s vagina, penetration with Schalk's penis, and cunnilingus. The trial court found that Detective Abney's testimony "touched on all of the essential elements of the offenses at issue."

{¶ 12} The Court then invited defense counsel to explain on the record what he did on behalf of Schalk to investigate the strength of the State's case and his recommendation to Schalk about the *Alford* plea. Defense counsel stated:

> * * * I have been on the case since roughly probably early March,

March-ish, of 2018. During that time, * * * the first thing we did was we explored [the] potential of a not guilty by reason of insanity [plea]. Two reports were prepared with that request - - one from the Forensic Psychiatry Center requested by the Court. * * * [T]hat came out and found that the evaluator's recommendation and opinion was that * * * Marvin was not under any kind of mental defect or illness that made him unable to understand the wrongfulness of his actions at the time.

I requested and the Court granted me a second opinion by Dr. Bob Stinson in Columbus. Dr. Stinson, in approximately June time frame, came back and indicated that he concurred with the first opinion though he did offer in that opinion that there was some level of mental disease or illness but that it didn't rise to the level of legal insanity.

The Court * * * had authorized an investigator who has spoken with Marvin on a few occasions who has spoken with some family members over the months. I think Marvin understands that his family has, at times, been less than cooperative with us which has made it hard to get some information from them.

Marvin and I have talked, at length, about the allegations that [E.] has made. I have offered my opinion to him on numerous occasions how a jury would take that information and things we could use to attack that information that we could use to raise reasonable doubt if Marvin decided to go to trial.

Given the potential of a life sentence, potentially 35 years to life in

prison, it was my recommendation that Marvin take the deal. We initially tried to work out a cap - - first a flat time and then a cap. Those offers were rejected which left us here this morning prepared to go to trial and I am prepared to go to trial.

I have met with Marvin several, many times in the last, over the course of the 13 months that I've represented him but probably at least five or six times in the last month or two. We've gone over the case. We've talked about the pluses and minutes [sic] of his case, things we could argue. But, ultimately, * * * I have the recommendation to him as recently as this morning when we spoke in the jury room * * * that it would be my recommendation * * * that he offer, again, because technically the deal was taken off the table, that he authorize me to make the deal that he plead to the three counts of rape where the under 13 is taken out. The State came back with accepting that offer with the understanding that he would plead also to the GSI but that wouldn't incur any additional time. That he would be facing * * * a maximum of 33 years in prison and * * * I did recommend, ultimately, that Marvin take that deal.

**{¶ 13}** The court then asked Schalk to explain why he was entering his *Alford* plea. Schalk responded: "A couple of reasons. One, I don't want to put my daughter through the trial. I don't want to put my family through this. The offer of the life tail being taken off the table is also a reason and - - and also - - I'm sorry. Maybe that's - - that's all I can think of right now * * *."

**{¶ 14}** The court explained to Schalk that, if he pled guilty to three felonies of the

first degree, each offense would carry a period of mandatory imprisonment of three to eleven years, by statute and due to his criminal history. The court also informed him that the sentences could be run consecutively for a maximum possible sentence of 33 years or concurrently for a minimum sentence of three years. The Court explained that it could impose a maximum fine of $20,000 on each count as well. With respect to the GSI, a third-degree felony with a victim under the age of 13, the court informed Schalk that the offense carried a potential term of 12 to 60 months in prison and a maximum fine of $10,000. Schalk indicated his understanding of these matters.

{¶ 15} The court then advised that all four of the offenses were sexually-oriented offenses and, as a result, he would be designated a Tier III sex offender. The court advised Schalk of his registration, reporting, and verification requirements as a Tier III offender, which would "endure for [his] lifetime with in-person verification every 90 days." Schalk acknowledged his understanding.

{¶ 16} The court advised Schalk that none of the offenses were eligible for community supervision and about post-release control.

{¶ 17} Schalk advised the court that he was entering his *Alford* pleas of his own free will, and that no one threatened, coerced, forced, or promised him anything to enter his pleas. The court advised Schalk of the constitutional rights that he would give up by entering his *Alford* pleas, and Schalk acknowledged his understanding. Schalk acknowledged that by entering his pleas, he gave up his right to appeal pretrial rulings by the court.

{¶ 18} The prosecutor read the three counts of rape in the bill of information; Schalk entered his guilty pleas, signing the plea forms and entering his pleas of "[g]uilty

by *Alford.*" He also entered his plea to GSI as charged in the indictment as "[g]uilty by *Alford.*"

{¶ 19} The court made the following findings:

The Court will make the finding that the defendant has appeared here in open court and after being advised of the contents of the entry of waiver and plea on indictment and Bill of Information that the defendant has voluntarily signed his name.

The Court further finds that the defendant has understood the giving up his constitutional rights, knowing what they are; he knows the charges and the maximum penalties that apply to them; he knows that he is not eligible for community control and that he may be required to pay a fine as well as restitution.

The Court finds that Mr. Schalk has understood the effect of the plea.

The plea has been made voluntarily and that there is a factual basis.

The Court will accept Mr. Schalk's Alford plea and determine that the evidence in this matter clearly and unequivocally establishes that Mr. Schalk's decision to plead guilty despite his protestations of innocence is based on his rational calculation that pleading guilty avoids the risk of a greater penalty by going to trial.

The Court will accept the Alford pleas, direct that the plea forms be filed of record.

{¶ 20} After a sentencing hearing, the trial court sentenced Schalk to a mandatory ten years on two of the rape offenses (Counts 1 and 2), a mandatory five years on the

third rape offense (Count 3), and a mandatory five years for the GSI (Count 4). The court ordered the sentences for rape to be served consecutively and the sentence for GSI to be served concurrently to the rapes, for an aggregate term of 25 years. Schalk was also designated a Tier II sexually-oriented offender for GSI and a Tier III sexually-oriented offender for rape.

{¶ 21} Schalk asserts the following assignment of error on appeal:

SCHALK DID NOT ENTER A KNOWING, INTELLIGENT AND VOLUNTARY ALFORD PLEA AND THE TRIAL COURT FAILED TO COMPLY WITH THE CONSTITUTIONAL STANDARDS FOR ACCEPTING SCHALK'S ALFORD PLEA.

{¶ 22} Schalk asserts that the State failed to proffer the evidence it needed to present to prove Schalk's guilt of the charged offenses. He claims that, although Detective Abney testified about some of the evidence in the case, there was no evidence: about when the three rapes occurred, what specific sexual conduct supported each of the three rapes, or of his daughter's age at the time of the alleged GSI (to support that she was under 13). Further, Schalk contends that defense counsel listed some of the work he had done on the case, but did not indicate if or how he had "investigate[d] the strength of the State's case." As such, he claims that the State did not provide a sufficient factual basis for its case against Schalk from which the court could have concluded that he had "rationally calculated it was in his interest to plead guilty." He also asserts that the trial court did not "comply with the constitutional standards for accepting his *Alford* plea."

{¶ 23} The State responds that the trial court fully complied with the requirements pursuant to Crim.R. 11 in accepting Schalk's plea as well as the additional requirements

necessary for an *Alford* plea.

**{¶ 24}** We agree with the State. This Court has previously stated the following with respect to pleas entered under the authority of *Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162:

> An *Alford* plea "permits a plea of guilty when the defendant nevertheless denies a necessary foundation of criminal liability, either with respect to the truth of the act or omission charged or the degree of culpability which the offense requires." *State v. Gossard*, 2d Dist. Montgomery No. 19494, 2003-Ohio-3770, at ¶ 7. "An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.,* quoting *Alford*, 400 U.S. at 37, 91 S.Ct. 160.

> When taking an *Alford* plea, a trial court must not only comply with the dictates of Crim.R. 11, but must "determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent." *Gossard,* [at] ¶ 11. "At a minimum, this requires an 'inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty.' " *Id.* "The essence of an

*Alford* plea is that a Defendant's decision to enter the plea against his protestations of factual innocence is clearly and unequivocally supported by evidence that he exercised that calculus for the purpose of avoiding some more onerous penalty that he risks by, instead, going to trial on the charges against him." *Id.* at ¶ 12.

*State v. Adkins*, 2015-Ohio-4605, 46 N.E.3d 1143, ¶12-13 (2d Dist.).

{¶ 25} In *Gossard*, this Court determined that the record failed to establish that the defendant's *Alford* plea was entered knowingly, intelligently, and voluntarily. The following factors were significant to this Court:

> * * * [T]he record does not portray what, if anything, Gossard's counsel did to investigate the strength of the State's case. The record does not reflect that Gossard's attorney recommended the guilty plea. The court heard no sworn testimony concerning the evidence against Gossard, but instead relied on a summary of evidence the prosecutor presented, which represented to the court in general terms that Gossard had admitted his criminal conduct to investigating officers. Gossard never stated or explained what his motivation was for entering the *Alford* plea, instead giving only monosyllabic responses to the trial court's leading questions on the matter. * * *

*Id.* at ¶ 10. As noted in *Gossard*, an "*Alford* plea represents a qualification to the assurances created by a proper Crim.R. 11(C) inquiry." *Id.* at ¶ 7.

{¶ 26} In Schalk's case, at the start of the hearing, the trial court correctly indicated that it was required to investigate the strength of the State's case, which it did by means

of hearing Abney's testimony under oath. The trial court also inquired of defense counsel regarding his investigation into the strength of the State's case against Schalk, determined if defense counsel recommended the *Alford* pleas to Schalk, and asked Schalk about the basis of his decision to enter the *Alford* pleas.

{¶ 27} In addition to Abney's testimony, the prosecutor directed the court's attention to the bill of particulars and stated that the three rape allegations were based upon Schalk's digital and penile penetration E.'s vagina, as well as cunnilingus. At the conclusion of Abney's testimony, the court noted that Abney "touched on all of the essential elements of the offenses at issue."[2]

{¶ 28} The court then inquired of defense counsel. Counsel explained in detail his investigation into the strength of the State's case and his recommendation to Schalk. The court then asked Schalk to state his reasons for entering his *Alford* pleas, and Schalk responded, "One, I don't want to put my daughter through the trial. I don't want to put my family through this. The offer of the life tail being taken off the table is also a reason * * *."

{¶ 29} Based upon the foregoing, we conclude that the record belies Schalk's assertion that no evidence was presented as to when the rapes occurred; they occurred in the course of E.'s overnight visits with Schalk during the time period set forth in the

---

[2] R.C. 2907.02(A)(2) provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.05(A) provides: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * * (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

indictment and bill of information, namely, July 1, 2017, through December 17, 2017, when E. was 12 years old. The record further belies Schalk's argument that there was no evidence regarding the specific sexual conduct that supported the charges. Abney's testimony and the prosecutor's statement made clear, and the court specifically determined, that the offenses were based upon Schalk's "digital penetration of [E.'s] vagina, penetration with his penis and then * * * cunnilingus." Regarding proof of E.'s age to support the GSI offense, the record is clear that E. was born in June 2005 and was 12 years old during the relevant time period of July 1, 2017, through December 17, 2017.

{¶ 30} We further reject Schalk's argument that there was an insufficient factual basis from which the court could have concluded that Schalk rationally calculated that it was in his best interest to enter his *Alford* pleas. Defense counsel represented to the court that he met with Schalk multiple times, discussed trial strategy, and recommended that he enter his *Alford* pleas to the rape counts in the bill of information to avoid the possibility of a life sentence. Schalk himself indicated that the "offer of the life tail being taken off the table" was a reason for his plea, as well as sparing E. and his family from a trial.

{¶ 31} We further conclude that the record belies Schalk's argument that there was no testimony regarding defense counsel's investigation of the case. Defense counsel testified that he met with Schalk multiple times, explored the possibility of a plea of not guilty by reason of insanity, and obtained two reports on Schalk's competency for trial. The docket reflects that defense counsel asked for and was granted funds to obtain the transcript of E.'s forensic interview. Defense counsel also filed a motion for a private investigator, which the court granted.

{¶ 32} Finally, based upon the foregoing, we conclude that Schalk's assertion that the record does not support a conclusion that he entered his pleas knowing the strength of the State's case lacks merit. E. disclosed multiple incidents of sexual abuse over a period of months, and defense counsel obtained the transcript of her forensic interview. Abney observed the interview and related E.'s disclosures to the court.

{¶ 33} We conclude that the trial court properly determined that Schalk made a rational calculation to enter his *Alford* pleas to avoid the potential of a life sentence. In other words, Schalk's decision was clearly and unequivocally supported by evidence that he exercised such a calculation to avoid the more onerous penalty he risked if he proceeded to trial.

{¶ 34} Schalk's assignment of error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Lucas W. Wilder
Hon. Mary Lynn Wiseman