[Cite as *State v. Montanez*, 2020-Ohio-1023.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108093 |
| v. | : | |
| JOSE MONTANEZ, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 19, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-616186-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Aqueelah A. Jordan, Assistant Prosecuting Attorney, *for appellee.*

Jerome M. Emoff, *for appellant.*


EILEEN T. GALLAGHER, A.J.:

**{¶ 1}** This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. Defendant-appellant, Jose Montanez, appeals his convictions and claims the following two errors:

1. An inadequate inquiry by a trial court during a Crim.R. 11 colloquy renders a subsequent guilty plea void.

2. The trial court failed to strictly comply with Crim.R. 11 thereby rendering appellant's plea void.

{¶ 2} We find no merit to the appeal and affirm.

## I. Facts and Procedural History

{¶ 3} Montanez was charged with two counts of rape, five counts of kidnapping, two counts of gross sexual imposition, and one count each of attempted rape and compelling prostitution. Pursuant to a plea agreement, Montanez pleaded guilty to two counts of rape and two counts of gross sexual imposition. The remaining counts were nolled.

{¶ 4} Montanez later asserted at the sentencing hearing that he did not remember pleading guilty to two counts of rape and indicated that he wanted to withdraw his guilty pleas. The court, the prosecutor, and defense counsel, however, collectively recalled that Montanez pleaded guilty to two counts of rape. (Tr. 154.) Their recollections were consistent with the judge's notes, the journalization of the plea hearing, the presentence investigation report, a mitigation of penalty report, and the transcript of the plea hearing. Therefore, the court overruled defense counsel's request for leave to file a motion to withdraw Montanez's guilty pleas and proceeded with sentencing. The court sentenced Montanez to eight years on the rape charge alleged in Count 1, 24 months on each of the gross sexual imposition charges alleged in Counts 3 and 7, and eight years on the second rape charge alleged

in Count 9. The court ordered the sentences to run consecutively for an aggregate 20-year sentence. This appeal followed.

## II. Law and Analysis

## A. Effect of Medication

{¶ 5} In the first assignment of error, Montanez argues the trial court failed to ensure that he entered his guilty pleas knowingly, intelligently, and voluntarily because the court failed to adequately inquire into the effect Montanez's anxiety medication had on his ability to understand the proceedings.

{¶ 6} A defendant's guilty plea must be made knowingly, intelligently, and voluntarily. "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996); *see also State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7. As the Ohio Supreme Court explained in *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462:

> A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision. The benefit to a defendant of agreeing to plead guilty is the elimination of the risk of receiving a longer sentence after trial. But, by agreeing to plead guilty, the defendant loses several constitutional rights. * * * The exchange of certainty for some of the most fundamental protections in the criminal justice system will not be permitted unless the defendant is fully informed of the consequences of his or her plea. Thus, unless a plea is knowingly, intelligently, and voluntarily made, it is invalid.

*Id.* at ¶ 25.

{¶ 7} In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we first review the record to determine whether the trial court complied with Crim.R. 11(C). *State v. Kelley*, 57 Ohio St.3d 127, 128, 566 N.E.2d 658 (1991). Crim.R. 11(C) sets forth certain constitutional and procedural requirements with which the trial court must comply prior to accepting a guilty plea. Under Crim.R. 11(C)(2), the trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2).

{¶ 8} The purpose of Crim.R. 11(C) is "'to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty.'" *State v. Woodall*, 8th Dist. Cuyahoga No. 102823, 2016-

Ohio-294, ¶ 12, quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). When a trial court complies with Crim.R. 11(C)(2) in accepting a plea, there is a presumption that the defendant's plea was knowingly, intelligently, and voluntarily made. *See, e.g., State v. Alexander*, 8th Dist. Cuyahoga No. 103754, 2016-Ohio-5707, ¶ 11; *State v. Murray*, 12th Dist. Brown No. CA2015-12-029, 2016-Ohio-4994, ¶ 20.

{¶ 9} Montanez advised the court at the plea hearing that he was taking medication for anxiety and panic attacks. The court asked what medication he was taking, and Montanez informed the court that he was taking Buspar. The court followed up with additional questions to determine if the medication was affecting Montanez's ability to understand the Crim.R. 11 colloquy:

THE COURT: You are taking some medication. When are you supposed to take it?

THE DEFENDANT: 9:00 in the morning I take 20 milligrams and 20 milligrams at 4:00 in the afternoon.

THE COURT: Did you have your dosage yesterday afternoon?

THE DEFENDANT: Yes.

THE COURT: Have your dosage this morning?

THE DEFENDANT: Yes.

THE COURT: Okay. Does your medication at all impact on your ability to think clearly, to hear clearly and understand what's going on at all?

THE DEFENDANT: When it first starts kicking in, I feel a pulsation in my head, the whole front of my head.
THE COURT: How are you feeling right now? It's about 10:00 now, 10:05. How are you feeling now?

THE DEFENDANT:  Nervous.

THE COURT:  Well that's natural.  Are you otherwise thinking clearly, understanding what we're talking about, everything like that?

THE DEFENDANT:  80 percent.

THE COURT:  Okay.  Is there something that I've said so far or that is happening so far that you're not clear on?

THE DEFENDANT:  No, not yet.

THE COURT:  If that happens, would you make sure you let me know because I will be — like I said, we will be going back and forth with these questions, and I can only rely upon what your answers are. Okay?

THE DEFENDANT:  Okay.

(Tr. 147-149.)  Despite Montanez's argument to the contrary, the court thoroughly inquired into the nature of Montanez's anxiety medication and any effects it might have on his understanding.

{¶ 10}  This court has held that where a trial court complies with the dictates of Crim.R. 11(C), the resulting guilty plea is presumed valid even though the defendant took medication that could impact the defendant's ability to think clearly and rationally as long as the record supports that finding.  *See, e.g.*, *State v. Brown*, 8th Dist. Cuyahoga No. 103835, 2016-Ohio-5415.  In *Brown*, the defendant informed the court during a plea hearing that he was on medication for depression and that his medication sometimes interferes with his ability to think rationally.  *Id.* at ¶ 22.  When the court inquired as to whether the defendant was thinking clearly

and rationally on the morning of his plea hearing, the defendant responded: "I don't know." *Id.* at ¶ 22.

{¶ 11} On further questioning, the defendant informed the court that he had discussed the plea to his satisfaction with counsel and agreed to inform the court that if he did not understand something during the hearing, he would stop the court and ask for an explanation. Based on this inquiry and the fact that the trial court complied with the requirements of Crim.R. 11(C), this court concluded that the defendant entered his guilty pleas knowingly, intelligently, and voluntarily even though he was on medication that occasionally affected his thinking. *Id.* at ¶ 25.

{¶ 12} As in *Brown*, Montanez indicated that he was satisfied with the legal services provided to him by defense counsel. (Tr. 139-140.) Although he indicated that his thinking was not entirely clear at time of the plea hearing, he agreed to inform the court if he did not understand any aspect of the plea proceedings. (Tr. 138-139.) The trial court explained each of Montanez's constitutional rights and Montanez indicated that he understood each one. Montanez also indicated that he understood the maximum penalties he could receive, his required subjection to postrelease control, and his mandatory sex-offender registration. (Tr. 143-147.)

{¶ 13} After completing the colloquy, the court again asked if Montanez understood everything by asking: "Anything that you can think of that we went over that you are not crystal clear on that we can answer a question for you or help to clear up for you?" Montanez replied: "I understood everything." (Tr. 147-148.)

{¶ 14} Despite Montanez's argument to the contrary, the court dutifully inquired into whether Montanez's anxiety medication affected his ability to enter a knowing, intelligent and voluntary guilty plea. Based on the trial court's careful questioning and Montanez's responses to those questions, we find no reason to doubt that Montanez understood the proceedings and was capable of entering his guilty pleas knowingly, intelligently, and voluntarily.

{¶ 15} Therefore, the first assignment of error is overruled.

### C. Right to Trial

{¶ 16} In the second assignment of error, Montanez argues his guilty pleas should be vacated because the trial court failed to explain that he was waiving his right to a jury trial by pleading guilty. He also contends the trial court failed to ensure that Montanez understood he would be subjected to mandatory prison time and postrelease control.

{¶ 17} A trial court must strictly comply with those provisions of Crim.R. 11(C)(2) that relate to the waiver of constitutional rights. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at syllabus. When the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), it is presumed the plea was entered involuntarily and is therefore invalid. *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 31. However, failure to use the exact language contained in Crim.R. 11(C) in informing a criminal defendant of his constitutional rights is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to the defendant. *Id.*

at ¶ 18 (exact language is preferred, but rote recitation of the rule is not required for strict compliance), citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

**{¶ 18}** The trial court reviewed Montanez's constitutional rights with him in a reasonably intelligent manner. The court prefaced the explanation of each individual right by informing Montanez that "by entering into this plea here today, you will be waiving or giving up these rights that we typically refer to as being trial rights." (Tr. 140-141.) With respect to the waiver of Montanez's right to a jury trial, the court explained that Montanez "[had] the right to go to trial in this case * * * and the jury [had] to be unanimous in their decision as to [his] guilt or [his] innocence." (Tr. 141.) The court also explained that Montanez could waive his right to a jury trial "and have [the court] make the decision in what is referred to as a bench trial." (Tr. 141.) The court asked Montanez if he understood these rights, and Montanez replied, "Yes." (Tr. 141.)

**{¶ 19}** The court further explained the government's burden to prove his guilt beyond a reasonable doubt as well as the defendant's rights to call and cross-examine witnesses, to invoke the court's subpoena power, to testify on his own behalf, and to remain silent. The court asked Montanez if he understood these rights, and Montanez again replied: "Yes." (Tr. 142.) Therefore, the record reflects that the trial court explained the waiver of Montanez's constitutional rights in a manner in which he could reasonably understand.

{¶ 20} Montanez nevertheless contends the trial court failed to explain the mandatory nature of both his prison sentence and postrelease control.

{¶ 21} A trial court must substantially comply with the requirements of Crim.R. 11(C)(2)(a) when explaining nonconstitutional rights such as the right to be informed of the maximum penalty involved. *Veney* at ¶ 14, citing *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing *Stewart* at 92-93.

{¶ 22} The trial court explained at the plea hearing that Montanez's guilty pleas would result in a mandatory prison sentence. The court advised Montanez that he was pleading guilty to two counts of rape, which were first-degree felonies. (Tr. 143.) With respect to penalties, the court explained: "Now, each felony of the first degree is punishable by a potential term of incarceration in yearly increments of between 3 and 11 years in the state penitentiary." Thus, the court explained that each rape conviction carried a minimum of three years in prison. Moreover, the court discussed the sentencing range Montanez agreed to as part of his plea agreement:

> THE COURT: * * * [T]he State had represented that part of this plea agreement would be that there would be range that I would choose from when I decided my sentence. It's an agreed recommended sentence that the sentence would be between ten and 30 years. Do you understand that, sir?
>
> THE DEFENDANT: Yes.

THE COURT: As I explained to you yesterday, I don't have to follow that recommendation if I choose not to. I am telling you that I will. I will have that sentence between those year ranges. So, although there's a possible sentence of up to a 32-year sentence, first of all, I will at least cap at 32 and, again, I won't go over that recommendation, I will abide by that recommendation. Do you understand that, sir?

THE DEFENDANT: Yes.

(Tr. 144-145.) The court further explained the maximum fines that could be imposed, but advised Montanez that it was not likely to impose them. (Tr. 145.) Thus, the court explained that Montanez was definitely going to prison and that probation was not an option. Indeed, Montanez's acknowledgment that he understood the agreed recommended sentence is evidence that he understood the mandatory nature of his prison sentence because defense counsel could not have agreed to the sentencing range without Montanez's consent.

{¶ 23} With respect to postrelease control, the court told Montanez that "because you will be receiving a prison sentence here * * * you will be subject to supervision upon your release by the Ohio Parole Authority on what is referred to as postrelease control or PRC." (Tr. 145.) The court further explained that postrelease control is "a fancy term of parole" and that the parole board would "supervise you for at least a five-year period." (Tr. 145.) Finally, the court described the penalties for violating postrelease control, and Montanez indicated that he understood all the penalties. (Tr. 146.) Therefore, the trial court substantially complied with its obligation to explain the maximum penalties Montanez could receive by virtue of his guilty pleas, including postrelease control.

**{¶ 24}** The second assignment of error is overruled.

**{¶ 25}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
MARY EILEEN KILBANE, J., CONCUR