[Cite as *State v. Evans*, 2021-Ohio-829.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2020 CA 00039 |
| | : | |
| WILLIAM D. EVANS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Licking County Court of
                                 Common Pleas, Case No. 19 CR 598


JUDGMENT:                        AFFIRMED


DATE OF JUDGMENT ENTRY:          March 17, 2021


APPEARANCES:


For Plaintiff-Appellee:                    For Defendant-Appellant:

WILLIAM C. HAYES                           JAMES A. ANZELMO
LICKING COUNTY PROSECUTOR                  446 Howland Dr.
                                           Gahanna, OH 43230
PAULA M. SAWYERS
20 S. Second St., 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Defendant-Appellant William D. Evans appeals the May 1, 2020 judgment entry of the Licking County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On November 21, 2019, J.W. called 911 to report that his 1999 Ford F150 pickup truck had been stolen from his business, Sunburst Pools, located in Pataskala, Licking County, Ohio. J.W. tracked the vehicle to another location in Pataskala. He believed Defendant-Appellant William D. Evans stole the pickup truck. Evans was previously employed by J.W. but J.W. fired him for stealing.

{¶3} Deputies with the Licking County Sheriff's Department reported to address where the pickup truck was allegedly located and they found the truck. Evans admitted to the Deputies that he took the truck without permission.

{¶4} Evans was arrested on November 22, 2019. He was indicted on December 5, 2019 on one count of Theft, a fourth-degree felony in violation of R.C. 2913.02(A)(1). The trial court appointed counsel to represent Evans. He entered a not guilty plea to the charge.

{¶5} The matter was scheduled for a jury trial, but Evans filed a motion to continue so the jury trial could be converted to a change of plea and sentencing hearing. The motion was granted and the matter was continued until May 2020 due to the COVID-19 state of emergency.

{¶6} On May 1, 2020, the State filed a Motion to Amend Count I of the indictment. Through plea negotiations, Evans and the State reached a plea agreement wherein the State would amend the charge of Theft to Attempted Theft, a fifth-degree felony in

violation of R.C. 2923.02(A) and 2913.02(A)(1). The trial court granted the motion on May 1, 2020. A presentence investigation was prepared for the sentencing hearing.

{¶7} The change of plea and sentencing hearing was held on May 1, 2020. The hearing took place via video conference due to the COVID-19 state of emergency. The trial court asked Evans if it was his intention to withdraw his not guilty plea to the amended charge of attempted theft. (T. 3-4). Evans responded in the affirmative. (T. 4).

{¶8} The trial court conducted the plea colloquy. The State recited the facts of the case. It stated the victim in the case had previously employed Evans but had fired him. (T. 10). When the Licking County Sheriff deputies arrived at the scene, Evans admitted he took the victim's pickup truck. (T. 10). Evans agreed to the facts as set forth by the State. (T. 10).

{¶9} The trial court next informed Evans of the possible sentence if it found him guilty of attempted theft. (T. 11). The maximum sentence for attempted theft was one year in the state penitentiary, a fine of $2,500, and three years of post-release control. Evans stated he understood. (T. 12). Evans was on probation at the time of sentencing. (T. 13).

{¶10} At the end of the plea colloquy, the trial court found Evans' guilty plea was freely, voluntarily, and "understandingly" made. (T. 16). It permitted Evans to withdraw his plea and enter a plea of guilty. The trial court found Evans guilty based on the facts as read by the State. (T. 16).

{¶11} Counsel for Evans informed the trial court that Evans had been incarcerated since November 21, 2019, approximately six months. (T. 17). He was a trustee in the jail. He was receiving mental health treatment and was next going to work on his addictions. (T. 17). Based on the length of Evans' incarceration, the amendment of the charge to a

fifth-degree felony, and how he had done while in prison, counsel requested the trial court grant Evans' release from jail, with credit for time served and allow him to complete a transitional program with his parole officer. (T. 17). The State made no recommendation as to sentencing. (T. 18).

{¶12} Evans told the court that he was going to back to his employment at Sunburst Pools because J.W. wanted him back to work. (T. 18). He apologized to J.W. and the trial court for his actions. (T. 18).

{¶13} The trial court stated that it was Evans' fourth theft-related conviction as an adult. He committed the current offense while on probation for charges of burglary and breaking and entering. (T. 19). He also had unrelated charges pending in another criminal proceeding. (T. 19). The trial court sentenced Evans to one year in prison on the attempted theft charge, with credit for 163 days. (T. 19). It revoked his post-release control and ordered him to serve an additional one year in prison. (T. 19). The trial court journalized the sentencing via judgment entry filed May 1, 2020.

{¶14} After the trial court sentenced Evans, Evans clarified with the court that he was going to prison for two years. (T. 20). He asked the trial court if there was anything he could do to change the court's mind. (T. 21). The trial court responded to Evans, "don't steal people's stuff." (T. 21). Evans expressed that he had obligations to his family and asked the court to give him one more chance because he was going to stop doing drugs. (T. 22). He denied stealing the truck because it was his work truck and he drove it every day. (T. 25). Evans told the court, "I don't know what to do, sir. I'm – it's not what I've been told. I've been talking with my lawyer with things. This is totally out of what was expected

and everything." (T. 26). The trial court informed Evans of his ability to appeal the trial court's sentencing entry.

{¶15} Evans filed an appeal of the trial court's May 1, 2020 judgment entry.

## ASSIGNMENTS OF ERROR

{¶16} Evans raises two Assignments of Error:

{¶17} "I. WILLIAM EVANS DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY PLEAD GUILTY, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTIONS.

{¶18} "II. WILLIAM EVANS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

## ANALYSIS

### I. Guilty Plea

{¶19} Evans contends in his first Assignment of Error that his guilty plea was not knowingly, intelligently, and voluntarily made because while he pleaded guilty, he did not expect to go to prison. He argues that based on his reaction after he was sentenced to prison, the trial court should have rejected his guilty plea. We disagree.

{¶20} " 'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Hurt*, 5th Dist. Muskingum No. CT2019-0053, 2020-Ohio-

2754, 2020 WL 2120071, ¶ 17 quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7 quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Moore*, 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, 2014 WL 3359226, ¶ 13.

{¶21} To ensure that pleas conform to these high standards, the trial judge must engage the defendant in a colloquy before accepting his or her plea. *See State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus; Crim.R. 11(C), (D), and (E). It follows that, in conducting this colloquy, the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 26. If a defendant receives the proper information, a reviewing court "can ordinarily assume that he understands that information." *State v. Carter*, 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979).

{¶22} Before accepting a guilty plea in a felony case, a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The court must also inform the defendant of both the constitutional and nonconstitutional rights he is waiving and determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and

sentence." Crim.R. 11(C)(2)(b). Finally, the court must determine that the defendant understands that he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c). Strict compliance with Crim.R. 11(C)(2)(c) is required because constitutional rights are involved. "However, failure to [literally comply] will not necessarily invalidate a plea.

{¶23} "The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *Veney* at ¶ 18 quoting *State v. Ballard*, 66 Ohio St.2d 473, 479–480, 423 N.E.2d 115 (1981). When a trial court complies with Crim.R. 11(C)(2) in accepting a plea, there is a presumption that the defendant's plea was knowingly, intelligently, and voluntarily made. *State v. Montanez*, 8th Dist. Cuyahoga No. 108093, 2020-Ohio-1023, 2020 WL 1310343, ¶ 8 citing *State v. Alexander*, 8th Dist. Cuyahoga No. 103754, 2016-Ohio-5707, ¶ 11; *State v. Murray*, 12th Dist. Brown No. CA2015-12-029, 2016-Ohio-4994, ¶ 20.

{¶24} Evans argues the trial court should not have accepted his guilty plea due to his protestations of innocence. He contends the trial court did not comply with the Crim.R. 11 colloquy requirements for an *Alford* plea, so that his plea was not knowingly, intelligently, or voluntarily given.

{¶25} In entering an *Alford* plea, a defendant maintains innocence, but consents to punishment: "[a]n individual accused of crime may voluntarily, knowingly, and

understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 91 S.Ct. 160 (1970). As explained by our brethren from the Second District in *State v. Padgett*, 67 Ohio App.3d 332, 338–339 (2nd Dist.1990):

> Because an *Alford* plea involves a rational calculation that is significantly different from the calculation made by a defendant who admits he is guilty, the obligation of the trial judge with respect to the taking of an *Alford* plea is correspondingly different. The trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor.
>
> * * *
>
> Where the defendant interjects protestations of innocence into the plea proceedings, and fails to recant those protestations of innocence, the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent. This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty.

{¶26} When there is a written affirmative assertion of an *Alford* notation on the plea form and some affirmation to the trial court of an *Alford* plea, a more detailed Crim.R. 11 colloquy is required to inquire into the reasoning for the *Alford* plea. *State v. Morrison*, 5th Dist. Licking No. 13-CA-35, 2014-Ohio-688, 2014 WL 795083, ¶13 citing *State v. Hayes*, 101 Ohio App.3d 73 (3rd Dist.1998).

{¶27} We review the record to determine if there were protestations of innocence. First, we review the plea form filed on May 1, 2020. There is no written assertion of an *Alford* notation on the plea form. Next, during the change of plea hearing, there was no affirmation to the trial court of an *Alford* plea. It was not until the trial court sentenced Evans to one year in prison on the charge of attempted theft and one year for a post-release control violation that Evans raised questions:

DEFENDANT: So, I got two years in prison now.

THE COURT: Yes, you do.

DEFENDANT: Is there anything I can do, sir?

THE COURT: Don't steal people's stuff.

* * *

DEFENDANT: There is nothing I can do to change your mind? My daughter – I got things going on with my daughter that she got taken because of my ex's drug –

* * *

DEFENDANT: Yes, sir. I took care of my three boys. I'm trying to get my daughter back. Can I do some probation or anything to prove to you that I will do right? You can give me extra time over probation if I mess up.

THE COURT: You had that last time.

DEFENDANT: I will do it, sir. I have changed myself. I will do it, I promise. You can give me – you can give me triple the time. I mean, I'm –

THE COURT: Obviously I can't because you don't like just the amount of time you've got now.

DEFENDANT: * * * I just need one more shot and I'm done with it, sir. I'm done with this. I'm done with the drug use. * * *

* * *

DEFENDANT: So, there's nothing I can do, sir.

THE COURT: Yeah. You can put your money where your mouth is and not steal people's stuff and we'll judge you by your actions. Once you've done it, then –

DEFENDANT: But, sir, I didn't steal.

* * *

DEFENDANT: That was my – but, sir, I didn't steal. That was my work truck.

THE COURT: Okay.

DEFENDANT: I drove it every day.

THE COURT: I understand.

DEFENDANT: Well but you're – you're saying that I stole it, sir.

THE COURT: Yeah, I am saying you stole it. Do you have any other questions, Mr. Evans?

DEFENDANT: I don't know what to do, sir. I'm – it's not what I've been told. I've been talking with my lawyer with things. This is totally out of what was expected and everything.

(T. 21-26).

{¶28} While Evans made protestations of his innocence, the record does not support Evans' contention on appeal that this was an *Alford* plea requiring a more detailed Crim.R. 11 colloquy. Evans did not protest his innocence until after his sentence was rendered. It appears from the dialogue between the Evans and the trial court that Evans did not expect a two-year prison term. During the colloquy, trial court had informed Evans of the maximum possible prison term for the offense of attempted theft in addition to the possibility of serving any post-release control time consecutively to his sentence. (T. 11-14). Evans stated that he understood. (T. 14).

{¶29} Because there was no *Alford* plea, we find the trial court's Crim.R. 11 colloquy was sufficient.

{¶30} Evans' first Assignment of Error is overruled.

## II. Ineffective Assistance of Counsel

{¶31} Evans contends in his second Assignment of Error that he was denied the effective assistance of counsel when his counsel failed to move to withdraw his guilty plea. We disagree.

{¶32} To succeed on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show the trial counsel acted incompetently. Second, the defendant must show "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶33} After the trial court imposed the sentence, Evans questioned his sentence and then stated he did not steal the truck. He argues his trial counsel should have moved to withdraw his guilty plea at that time. A motion to withdraw a guilty plea is governed by the standards set forth in Criminal Rule 32.1, which provides that a trial court may grant a defendant's post-sentence motion to withdraw a guilty plea only to correct a manifest injustice. Therefore, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977). Although no precise definition of "manifest injustice" exists, in general, "manifest injustice relates to some fundamental flaw in the proceedings which result in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Walsh*, 5th Dist. Licking No. 14-CA-110, 2015-Ohio-4135, ¶ 16, citing *State v. Wooden*, 10th Dist. Franklin No. 03AP-368, 2004-Ohio-588. Under this standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977).

{¶34} We cannot say that had trial counsel raised a motion to withdraw his guilty plea after he sentence was imposed, Evans could have established the existence of manifest injustice. First, the statement of facts read by the State and initially agreed to by Evans said that Evans was employed by J.W. but fired for stealing. J.W. accused Evans of stealing a truck from his business. When deputies arrived at Evans' location, they found the truck and he admitted to taking the vehicle. After he was sentenced, Evans first argued

the trial court should give him another chance. He next argued he did not steal the truck because it was his work truck. We found above there was no *Alford* plea in this case.

{¶35} Next, this Court has held as a presentence motion to withdraw a guilty plea, "a change of heart or mistaken belief about pleading guilty is not a reasonable basis that requires a trial court to permit the defendant to withdraw his guilty plea." *State v. Davison*, 5th Dist. Stark No. 2008-CA-00082, 2008-Ohio-7037, 2008 WL 5456352, ¶ 45 citing *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988). "[T]he trial judge must determine whether the claim of innocence is anything more than the defendant's change of heart about the plea agreement." *Id.* citing *State v. Kramer*, Mahoning App. No. 01-C.A.-107, 2002-Ohio-4176, ¶ 58. The Fourth District Court of Appeals in *State v. Meade*, 4th Dist. Scioto No. 17CA3816, 2018-Ohio-3544, ¶ 21 cited this reasoning to affirm the denial of a post-sentence motion to withdraw a plea. Evans appeared amenable to the proceedings until he was sentenced to two years in prison. It could be argued the record supports the conclusion that Evans had a change of heart about the plea agreement and could not establish a manifest miscarriage of justice.

{¶36} Based on the record in this case, we find Evans has failed to demonstrate the performance of his trial counsel was deficient and the deficient performance was prejudicial to Evans. Accordingly, we find reasonable trial counsel may have determined it was not prudent to raise a post-sentence motion to withdraw a guilty plea at the sentencing hearing.

{¶37} Evans' second Assignment of Error is overruled.

## CONCLUSION

{¶38} The judgment of the Licking County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.