[Cite as *State v. Patton*, 2026-Ohio-780.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NOS.   2025-A-0033 |
| | 2025-A-0034 |
| Plaintiff-Appellee, | **2025-A-0035** |
| - vs - | Criminal Appeals from the Court of Common Pleas |
| JACK WESLEY PATTON, JR., | |
| Defendant-Appellant. | Trial Court Nos.   2025 CR 0021 |
| | 2025 CR 0022 |
| | 2025 CR 0023 |

## OPINION AND JUDGMENT ENTRY

Decided: March 9, 2026
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, 25 West Jefferson Street., Jefferson, OH 44047 (For Plaintiff-Appellee).

*Edward F. Borkowski*, *Jr.*, P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

MATT LYNCH, P.J.

{¶1} Appellant, Jack Wesley Patton, Jr., appeals the judgments of the Ashtabula County Court of Common Pleas sentencing him to an indefinite prison sentence of eight to twelve years following his guilty pleas to two counts of Felonious Assault and one count of Aggravated Possession of Drugs in three separate cases. For the following reasons, we affirm.

{¶2} In February 2025, in case No. 25CR00021, an Ashtabula County Grand Jury indicted Patton on two counts: Attempted Murder, a first-degree felony, in violation

of R.C. 2923.02, 2903.02(A) and (D), and 2929.02(B) and (E)(1); and Felonious Assault, a second-degree felony, in violation of R.C. 2903.11(A)(2), (D)(1)(a), and (D)(2).

{¶3} Also in February, in case No. 25CR00022, an Ashtabula County Grand Jury indicted Patton on one count of Aggravated Robbery, a first-degree felony, in violation of R.C. 2911.01(A)(3) and (C); and two counts of Felonious Assault, a second-degree felony, in violation of R.C. 2903.11(A)(1) and (D)(1)(a).

{¶4} In March 2025, in case No. 25CR00023, an Ashtabula County Grand Jury indicted Patton on two counts: Aggravated Possession of Drugs, a fifth-degree felony, in violation of R.C. 2925.11(A) and (C)(1)(a); and Possession of Drugs, a first-degree misdemeanor, in violation of R.C. 2925.11(A) and (C)(2)(a).

{¶5} In April 2025, a plea hearing for all three cases was held, at which Patton refused the State's plea offer. When the trial court inquired whether Patton was satisfied with his representation, Patton raised the issue of witnesses for the upcoming jury trial. The court informed him of the subpoena procedure, wherein his attorney could file subpoenas and compel witnesses to appear at the trial.

{¶6} On June 5, 2025, a few days before the jury trial, the trial court held a status conference. The court inquired into Patton's expressed interest in hiring a new lawyer and reminded Patton trial was scheduled for the following Monday. The court informed Patton that if he hired a new lawyer and this new lawyer requested additional time, the court would consider the request. Patton relayed that his sister was not allowing him access to his inheritance, but he had finally convinced a new attorney to visit him in the jail. The court reminded Patton he was facing serious charges and had discussed hiring new counsel at a prior hearing, but "nothing has happened." The court rejected Patton's

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

offer to sign speedy time waivers because "that in and of itself is not going to suffice without something else." The State noted the arraignment had been in early March and all discovery had been provided to the defense, including videos and surveillance video, and contended Patton's requests were merely a stalling tactic. At the conclusion of the hearing, Patton asked if he still had to go forward with his appointed attorney. The court responded that he did unless he hired a new attorney.

{¶7} On June 9, 2025, the morning of trial, Patton refused to attend trial and to change clothes. Shortly after, the parties informed the court Patton agreed to the State's plea deal in which he would plead (1) guilty to one count of Felonious Assault in case No. 2025CR00021; (2) guilty while maintaining innocence, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1971), to one count of Felonious Assault in case No. 2025CR00022; and (3) guilty to one count of Aggravated Possession of Drugs in case No. 2025CR00023. In exchange, the State proposed an eight-year prison sentence on each count of Felonious Assault, and for the sentences on all counts to run concurrently. The court noted this is an indefinite sentencing case, and the sentence would be eight to twelve years.

{¶8} Patton signed the written plea agreements, and the court engaged him in a Crim.R. 11(C)(2) colloquy to ensure Patton's pleas were entered knowingly, intelligently, and voluntarily. The court inquired why Patton wished to plead guilty pursuant to *Alford* to one count of Felonious Assault in case No. 2025CR00022. The State outlined the factual basis for the record, stating:

> [I]t was December 30th it looks like, Ashtabula Police Department received information . . . [the victim] had been struck in the head with a large rock by an individual . . . and that Jack Patton was complicit in that event. He held back [the victim's] girlfriend from assisting [the victim], and he did make or

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

shout out comments to others in the group to run [the victim's] pockets, meaning to rifle through [the victim's] pockets as he, [the victim], laid unconscious on the ground after being beat in the head with this very large rock by [Patton's accomplice].

{¶9} Patton replied, "it's part of the plea deal, I guess. But that's not how it happened." He agreed with the court that although he was contesting the underlying facts, he still desired to enter a guilty plea to the offense.

{¶10} As relevant to this appeal, Patton confirmed he was not threatened or promised anything; he understood the penalties against him; he was waiving his constitutional right to call witnesses on his own behalf; he had discussed all three cases with his attorney, including discovery and potential witnesses; and he was satisfied with his attorney's "time, advice, and professionalism."

{¶11} After the court accepted Patton's pleas, the parties waived a pre-sentence investigation, and the court proceeded to sentencing. The court sentenced Patton to (1) an indefinite prison term of eight to twelve years on the count of Felonious Assault in case No. 2025CR00021; (2) an indefinite prison term of eight to twelve years on the count of Felonious Assault in case No. 2025CR00022; and (3) a twelve-month prison term on the count of Aggravated Possession of Drugs in case No. 2025CR00023. All sentences were ordered to be served concurrently for a total of eight to twelve years imprisonment.

{¶12} Patton timely appealed all three cases and raises three assignments of error for our review:

{¶13} "[1.] The trial court erred by denying appellant's request for a continuance and for funds for an investigator.

{¶14} "[2.] The trial court erred by accepting appellant's guilty pleas when they were not knowing, intelligent, and voluntary.

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

{¶15} "[3.] Appellant's counsel was ineffective."

{¶16} We consider Patton's assignments of error out of turn for ease of discussion.

### A Guilty Plea is a Break in the Chain of Events

{¶17} In his first assignment of error, Patton contends the trial court erred by denying his requests for additional time to retain counsel and funds for an investigator to find potential witnesses. In his third assignment of error, Patton contends his counsel was ineffective for not investigating potential witnesses, making a timely request for an investigator, and seeking a continuance.

{¶18} Despite Patton's contentions, he pleaded guilty, which operates as a waiver to the issues he raises. In other words, "'a guilty plea represents a break in the chain of events that preceded it in the criminal process; thus, a defendant, who admits his guilt, waives the right to challenge the propriety of any action taken by a trial court or trial counsel prior to that point in the proceedings unless it affected the knowing and voluntary character of the plea. . . . This 'waiver' is applicable to a claim of ineffective assistance of trial counsel unless the allegation caused the plea to be less than knowing and voluntary.'" *State v. Wilmington*, 2023-Ohio-512, ¶ 25 (11th Dist.), quoting *State v. Madeline*, 2002 WL 445036, *4 (11th Dist. Mar. 22, 2002). *See also State v. Muhammad*, 2014-Ohio-5771, ¶ 41 (appellant waived his ineffective assistance of counsel claim on appeal because he did not argue his attorney's alleged deficient performance caused his plea to be entered unknowingly, unintelligently, or involuntarily); *accord State v. Byas*, 2022-Ohio-1814, ¶ 20 (11th Dist.).

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

{¶19} Further, as our review of the facts indicates, Patton's arguments are disingenuous because although he requested more time and mentioned the need to locate witnesses, he did not do so with a formal motion or express an articulated need. Rather, Patton informally requested a continuance and inquired into the possibility of the court providing funds for an investigator. This was not the first time Patton stated he was seeking to retain new counsel. The court responded that it would entertain a formal motion for a continuance by new counsel if one was filed. Similarly, Patton could not identify any potential witnesses when he asked the court for funds to hire an investigator. Patton never proffered what information these potential witnesses would provide and/or what facts he disagreed with besides a general, vague disagreement. Further, he did not respond with any specificity when the trial court asked him. Lastly, although Patton contends he would not have pleaded guilty but for his counsel's deficient performance, he does not argue counsel's performance affected the voluntary and knowing nature of his guilty pleas, he affirmed he was satisfied with his counsel's representation, and he has not made any showing of prejudice.

{¶20} Patton's first and third assignments of error are without merit.

## Guilty Pleas

{¶21} In his second assignment of error, Patton challenges whether his guilty pleas could have been entered knowingly, intelligently, and voluntarily. He concedes the trial court advised him of his constitutional and nonconstitutional rights; however, he claims the coercive circumstances before and during the plea hearing rendered his guilty pleas involuntary because he agreed to the State's plea deal on the morning of trial. Patton further contends the record reveals he did not knowingly change his pleas because

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

he requested a clarification on indefinite sentencing before he signed the written plea agreement and the trial court engaged him in a Crim.R. 11(C) colloquy.

{¶22} "This court reviews de novo whether the trial court accepted a plea in compliance with Crim.R. 11." *State v. Willard*, 2021-Ohio-2552, ¶ 51 (11th Dist.).

{¶23} "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *Id*. at ¶ 52, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11 was adopted to give trial courts detailed instructions on the procedures to follow before accepting guilty pleas. *Id*., citing *State v. Barker*, 2011-Ohio-4130, ¶ 9.

{¶24} Crim.R. 11(C)(2) provides, in relevant part, as follows:

In felony cases the court . . . shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . . and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶25} In *State v. Dangler*, 2020-Ohio-2765, the Supreme Court of Ohio explained, "[w]hen a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish an error occurred in the trial court proceedings and that he was prejudiced by that error." *Id.* at ¶ 13.

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

{¶26} There are limited exceptions to the prejudice component. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14. Similarly, "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Id.* at ¶ 15 *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 (trial court completely failed to comply with Crim.R. 11(C)(2)(a) requirement to explain the maximum penalty when it made no mention of defendant's mandatory term of postrelease control in the plea colloquy).

{¶27} On appellate review, the questions to be answered are "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶28} We start with the premise that a guilty plea is deemed to have been entered knowingly and voluntarily when, as Patton concedes is the case here, the record demonstrates the trial court complied with Crim.R. 11(C). *Wilmington*, 2023-Ohio-512, at ¶ 26 (11th Dist.). Thus, Patton is required to make a showing of prejudice.

{¶29} The transcript belies Patton's arguments that his pleas were involuntarily and unknowingly made. On the morning of trial, Patton stated he accepted the State's plea deal and he wanted a "global resolution." He never expressed doubt, and there was no pressure from either his counsel, the State, or the court that is evident in the record. When Patton inquired into indefinite sentencing, the court allowed his counsel time to

explain it and his qualifying offenses, after which he indicated he understood and consented to the State's recommended sentence. In addition, we note Patton received the benefit of his bargain because the four remaining counts against him were dismissed, including the more serious charges of Attempted Murder and Aggravated Robbery, and all three sentences were run concurrently. Thus, Patton has not satisfied his burden of demonstrating prejudice.

{¶30} Patton also contends his decision to plead guilty pursuant to *Alford* does not appear to have been the product of rational decision-making. Rather, he asserts the trial court's denial of his request for more time created a "coercive pressure" that left him with no choice but to change his plea.

{¶31} "An *Alford* plea is a plea of guilty entered with a contemporaneous protestation of innocence." *State v. Obhof*, 2023-Ohio-408, ¶ 39 (11th Dist.). "Although a plea may be entered knowingly and intelligently, the *Alford* plea 'involves a rational calculation that is significantly different from the calculation made by a defendant who admits he is guilty . . . .'" *Id.*, quoting *State v. Padgett*, 67 Ohio App.3d 332, 338 (2d Dist. 1990). "The trial court must inquire into and seek to 'resolve the conflict between the waiver of trial and the claim of innocence.'" *Id.*, quoting *Alford*, 400 U.S. at 38, fn.10.

{¶32} "Before accepting an *Alford* plea, a trial court 'must ascertain that notwithstanding the defendant's protestations of innocence' the defendant has made a rational calculation that the plea bargain offered is in his or her best interest by avoiding the risks of a greater punishment if a jury returns a guilty verdict." *Id.* at ¶ 40, quoting *State v. Wasilewski*, 2020-Ohio-5141, ¶ 23 (11th Dist.), quoting *Padgett* at 338.

{¶33} In the context of *Alford*, the record must demonstrate the following:

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

(1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made.

*State v. Piacella*, 27 Ohio St.2d 92 (1971), syllabus.

{¶34} "In addition to the above, an *Alford* plea requires a factual basis for the charges be provided to ensure that the defendant has made a rational calculation, based on the strength of the State's case, between the risk of trial and the consequences of pleading guilty." *Obhof*, 2023-Ohio-408, at ¶ 42 (11th Dist.), citing *State v. Gil*, 2019-Ohio-839, ¶ 11 (11th Dist.) and *Alford*, 400 U.S. at 38, fn.10.

{¶35} Contrary to Patton's assertion, his decision appears to be the product of a "rational calculation" of the charges and penalties he was facing. In case No. 2025CR00022, Patton was facing two counts of Felonious Assault and the more serious charge of Aggravated Robbery. In exchange for a guilty plea to one count of Felonious Assault, the State offered to recommend a concurrent sentence with the other two cases. It is also clear Patton understood the purpose of an *Alford* plea, by disagreeing with the facts, i.e., "how it happened," but agreeing he still wished to plead guilty. As we have repeatedly noted in response to Patton's argument that he was unprepared for trial and thus coerced into accepting a plea deal, he never identifies what evidence or witnesses could have been procured that were not in the time that was given, and there is no coercion, pressure, or even encouragement to plead evident in the record. In fact, he confirmed he was not threatened or promised anything in exchange for his pleas and was

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

entering his pleas with "his own free will."  Thus, Patton has failed to demonstrate his *Alford* plea was anything but knowingly, intelligently, and voluntarily made.

{¶36} Patton's second assignment of error is without merit.

{¶37} The judgments of the Ashtabula County Court of Common Pleas are affirmed.


JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035

---

## JUDGMENT ENTRY

---

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit.  It is the judgment and order of this court that the judgments of the Ashtabula County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.


                              PRESIDING JUDGE MATT LYNCH


                              JUDGE JOHN J. EKLUND,
                              concurs


                              JUDGE SCOTT LYNCH,
                              concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case Nos. 2025-A-0033, 2025-A-0034, 2025-A-0035